Argued and submitted March 5, 2003, decision of the Court of Appeals reversed; judgments of the circuit court affirmed March 11, 2004

STATE OF OREGON,
*Respondent on Review,*

*v.*

JASON LEE AUSMUS,
*Petitioner on Review.*

(CC 9901-40130; CA A107691; SC S49207 (Control))

STATE OF OREGON,
*Respondent on Review,*

*v.*

CHRISTOPHER PECK ANDREWS,
*Petitioner on Review.*

(CC 9812-51296; CA A107692)

STATE OF OREGON,
*Respondent on Review,*

*v.*

WARREN B. COX,
*Petitioner on Review.*

(CC 9901-40371; CA A107693)

STATE OF OREGON,
*Respondent on Review,*

*v.*

MARIA ESTELA GONZALEZ,
*Petitioner on Review.*

(CC 9901-40129; CA A107694)

STATE OF OREGON,
*Respondent on Review,*

*v.*

MASHAUN ALLEN HORNE,
*Petitioner on Review.*

(CC 9901-40128; CA A107695)

STATE OF OREGON,
*Respondent on Review,*

*v.*

LEAH HART-LANDSBERG,
*Petitioner on Review.*

(CC 9901-40231; CA A107696)

STATE OF OREGON,
*Respondent on Review,*

*v.*

CHARLES WILMER JOHNSON,
*Petitioner on Review.*

(CC 9905-13654; CA A107697)

STATE OF OREGON,
*Respondent on Review,*

*v.*

AARON WILLIAM MILLER,
*Petitioner on Review.*

(CC 9901-40232; CA A107698)

STATE OF OREGON,
*Respondent on Review,*

*v.*

KRISTEN EARLEEN SAGE,
*Petitioner on Review.*

(CC 9901-40126; CA A107699)

STATE OF OREGON,
*Respondent on Review,*

*v.*

DANA DeMASTER,
*Petitioner on Review.*

(CC 9812-51298; CA A107700)

STATE OF OREGON,
*Respondent on Review,*

*v.*

MELISSA WADE ROHS,
*Petitioner on Review.*

(CC 9901-40234; CA A107701; SC S49364)

85 P3d 864

Hugh Sage, Portland, argued the cause and filed the briefs for petitioner on review Sage. With him on the brief on the merits was Timothy M. Bowman. Andrew S. Chilton,

Portland, argued the cause and filed the briefs for petitioners on review Cox, DeMaster, Gonzalez, Hart-Landsberg, Johnson, Miller, and Rohs. With him on the brief on the merits were Lisa J. Ludwig, Steven J. Sherlag, Timothy M. Bowman, Paul T. Loney, A. Alexander Hamalain, Stuart A. Sugarman, and Lake James H. Perriguey.

No appearance for petitioners on review Ausmus, Andrews, and Horne.

Erika L. Hadlock, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Alia S. Miles and Jonathan A. Ater of Ater Wynne LLP, Portland, and Les Swanson, Portland, filed a brief on behalf of *amicus curiae* ACLU Foundation of Oregon, Inc.

Before, Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

DE MUNIZ, J.

---

** Kistler, J., did not participate in the consideration or decision of this case.

## DE MUNIZ, J.

The issue in each of these cases, which were consolidated on appeal and on review, concerns the facial constitutionality of one variation of the crime labeled in ORS 166.025(1)(e) as disorderly conduct. ORS 166.025(1)(e) provides, in part:

"A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

"* * * * *

"(e)  Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse[.]"

Each defendant demurred to an accusatory instrument that charged that defendant with violating the foregoing statute. Each defendant raised, among other things, two types of facial constitutional challenges to the statute, arguing that (1) the statute was unconstitutionally overbroad, in that it criminalized forms of expression, speech, and peaceable assembly protected under Article I, sections 8 and 26, of the Oregon Constitution[1] and the First Amendment to the United States Constitution;[2] and (2) the statute was unconstitutionally vague under Article I, sections 20 and 21, of the Oregon Constitution[3] and the Due Process Clause of the

---

[1] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Article I, section 26, of the Oregon Constitution provides, in part:

"No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good[.]"

[2] The First Amendment to the United States Constitution provides, in part:

"Congress shall make no law * * * abridging the freedom of speech * * * or the right of the people peaceably to assemble * * *."

[3] Article I, section 20, of the Oregon Constitution provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Article I, section 21, of the Oregon Constitution provides, in part:

"No ex-post facto law * * * shall ever be passed * * *."

Fourteenth Amendment to the United States Constitution.[4] The trial court sustained defendants' demurrers, concluding that ORS 166.025(1)(e) was unconstitutionally vague under the Oregon Constitution. The state appealed, and the Court of Appeals reversed and remanded to the trial court. *State v. Ausmus*, 178 Or App 321, 37 P3d 1024 (2001). We allowed review and now reverse the decision of the Court of Appeals and affirm the judgments of the trial court.

In this court, defendants, joined by *amicus curiae* American Civil Liberties Union Foundation of Oregon, Inc., again challenge the constitutionality of ORS 166.025(1)(e) on the grounds that that statute is both overbroad and vague in violation of the state and federal constitutions.[5] Because we cannot address those constitutional challenges until we first discern the conduct that ORS 166.025(1)(e) proscribes, we begin our analysis by construing that statute, beginning with its text and context. *See State v. Chakerian*, 325 Or 370, 376-80, 938 P2d 756 (1997) (construing statute before addressing similar facial constitutional challenges); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (setting out statutory construction methodology). In doing so, we give words of common usage "their plain, natural and ordinary meaning." *Id.* at 611. We also consider, at the first level of analysis, any prior case law from this court interpreting the statute at issue. *State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998). If the legislature's intent is clear from that analysis, then our inquiry ends. *PGE*, 317 Or at 611.

Under ORS 166.025(1)(e), a person commits one variation of the crime of disorderly conduct when the person: (1) with the intent to cause, or by recklessly creating a risk of

---

[4] The Fourteenth Amendment to the United States Constitution provides, in part:

"No State shall * * * deprive any person of life, liberty, or property, without due process of law[.]"

[5] We note that, although all defendants challenge ORS 166.025(1)(e) on the same constitutional grounds, the particularities of their arguments differ in some respects. For ease of reading, we refer to defendants collectively as "defendants" throughout this opinion and do not distinguish their specific arguments.

causing, public inconvenience, annoyance, or alarm; (2) congregates with other persons in a public place; and (3) refuses to comply with a lawful order of the police to disperse. The parties agree, as do we, that the element of "[c]ongregates with other persons in a public place" under ORS 166.025(1)(e) describes conduct encompassed within the meaning of the phrase "assembling together" under Article I, section 26, and the word "assemble" under the First Amendment. *See* 336 Or at 498 nn 1, 2 (setting out constitutional provisions). The parties, however, disagree as to the meaning of the other two elements of the crime—specifically, the statutory culpable mental state and the meaning of the term "lawful order" contained within the phrase "refuses to comply with a lawful order of the police to disperse." We address in turn the parties' arguments about the meaning of each of those statutory elements.

■     Defendants and the state disagree about both the effect and the scope of the culpable mental state described in ORS 166.025(1)(e). First, defendants argue that the culpable mental state under ORS 166.025(1)(e) operates to prohibit a congregation of people that intentionally causes, or recklessly creates a risk of causing, public inconvenience, annoyance, or alarm. As we understand the premise of that argument, defendants view the culpable mental state under ORS 166.025(1)(e)—that is, an "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof"—as effectively proscribing any congregation from which a factfinder may infer an intent to cause, or a reckless creation of a risk of causing, the type of harm described under that statutory phrase. *See generally Delgado v. Souders*, 334 Or 122, 135, 137, 46 P3d 729 (2002) (element of culpable mental state may be established by circumstantial evidence and reasonable inferences arising from such evidence, including evidence of particular conduct). As we explain below, that premise is incorrect, because it ignores the part of the statutory definition of the crime that requires a person also to "refuse to comply with a lawful order of the police to disperse."

      This court previously has explained that the statutory phrase "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," does not

describe a harm, or a risk of a harm, that ORS 166.025(1) prohibits. *See State v. Spencer*, 289 Or 225, 229, 611 P2d 1147 (1980) (explaining that public inconvenience, annoyance, or alarm is not prohibited harm under ORS 166.025(1)). Instead, that phrase describes the culpable mental state that the state must prove that a defendant possessed when the defendant engaged in the conduct that the statute proscribes under each variation of the crime of disorderly conduct.[6] *Id.* Under paragraph (e) of ORS 166.025(1), the paragraph challenged here, that proscribed conduct is *both* the congregation with others in a public place *and* the refusal to obey a lawful order of the police to disperse. Stated differently, a person who congregates with others in a public place with the intent to cause, or by recklessly creating a risk of causing, public inconvenience, annoyance, or alarm violates ORS 166.025(1)(e) *only if* that person also refuses to obey a lawful police order to disperse with that same mental state. Thus, contrary to defendants' argument, the statutory culpable mental state does not purport to criminalize only the act of congregating with others with the intent to cause the statutorily described circumstances.

■        Defendants and the state also make arguments that suggest that their views differ respecting the effect of the culpable mental state that ORS 166.025(1)(e) requires. Defendants posit that ORS 166.025(1)(e) would withstand their

[6] ORS 166.025(1) provides in its entirety:

"A person commits the crime of disorderly conduct if, *with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof*, the person:

"(a) Engages in fighting or in violent, tumultuous or threatening behavior;

"(b) Makes unreasonable noise;

"(c) Disturbs any lawful assembly of persons without lawful authority;

"(d) Obstructs vehicular or pedestrian traffic on a public way;

"(e) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse;

"(f) Initiates or circulates a report, knowing it to be false, concerning an alleged or impending fire, explosion, crime, catastrophe or other emergency; or

"(g) Creates a hazardous or physically offensive condition by any act which the person is not licensed or privileged to do."

(Emphasis added.) As can be seen from its text, ORS 166.025(1) does not define any variation of disorderly conduct by describing a prohibited *harm*. Instead, in each paragraph under ORS 166.025(1), the statute describes *conduct* that, if performed with the requisite mental state, constitutes disorderly conduct.

constitutional challenges if the culpable mental state under that statute required the state to prove that, by engaging in the proscribed conduct, the defendant intended *only* to cause public inconvenience, annoyance, or alarm—or, in other words, that the defendant lacked any intent to exercise a constitutionally protected right, such as the right to free expression or speech, or peaceable assembly. The state, however, asserts that, even if a defendant intended to exercise a constitutionally protected right, a defendant also may possess the requisite statutory mental state if he or she intended to cause, or recklessly created a risk of causing, one of the statutorily described circumstances.[7]

■    Whether the culpable mental state under ORS 166.025(1)(e) requires proof of a defendant's sole intent is a question of statutory interpretation. Because ORS 166.025(1)(e) is a criminal statute, the statutory definitions of the culpable mental states of "with intent" and "recklessly" provided under ORS 161.085 apply. *See* ORS 161.085 (providing definitions for culpable mental states under Oregon Criminal Code of 1971 unless context requires otherwise). That statute defines those terms as follows:

"(7)   'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described.

"* * * * *

"(9)   'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof

---

[7] The parties draw their arguments, in large part, from the United States Supreme Court's decision in *Colten v. Kentucky*, 407 US 104, 92 S Ct 1953, 32 L Ed 2d 584 (1972). In that case, the Court relied on a state appellate court construction of a state statute virtually identical to ORS 166.025(1)(e), wherein the state appellate court had concluded that the statute applied only when a defendant possessed a "predominant" intent to cause, or recklessly created a risk of causing, the statutorily described harms. As can be seen in the text that follows, we do not construe ORS 166.025(1)(e) in the same manner as that upon which the Court in *Colten* relied.

constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Applying those statutory definitions to ORS 166.025(1)(e), we conclude that ORS 166.025(1)(e) requires that a defendant act with the conscious objective to cause ("with intent"), or with the awareness and conscious disregard of the substantial and unjustified risk of causing ("recklessly creating a risk thereof"), a public inconvenience, annoyance, or alarm. Further, nothing in the text of the statute suggests that a defendant who possesses *dual* intentions—that is, to cause public inconvenience, annoyance, or alarm *and* to exercise a constitutionally protected right—is exempt from the purview of the statute. Thus, a defendant may intend to exercise a constitutionally protected right— such as the right to free expression or speech, or peaceable assembly—and nevertheless may possess the mental state proscribed under ORS 166.025(1)(e).

■    Having clarified the effect and scope of the culpable mental state under ORS 166.025(1)(e), we next consider the meaning of the term "lawful order" in the statutory phrase "refuses to comply with a lawful order of the police to disperse." *Amicus*[8] contends that the term "lawful order" means *any* order that a duly appointed and authorized police officer issues and that that term encompasses an order to disperse issued for any reason whatsoever. By contrast, the state argues that the term "lawful order" refers to only an order that a duly appointed and authorized police officer issues that *also* is supported by—and is not in violation of— substantive law, including the state and federal constitutions. Stated differently, the state asserts that an order to disperse is a "lawful order" under ORS 166.025(1)(e) only if it does not infringe on a person's exercise of constitutionally protected rights, such as the right to free expression or speech and the right to peaceable assembly.

The term "lawful order" is not statutorily defined. The dictionary defines the word "lawful," in part, as

---

[8] Defendants do not challenge the state's proffered interpretation of the term "lawful order" under ORS 166.025(1)(e); instead, they argue that, even if the state's interpretation of that term is correct, the statute nevertheless is unconstitutionally overbroad and vague in violation of the state and federal constitutions.

"conformable to law : allowed or permitted by law : enforceable in a court of law * * *." *Webster's Third New Int'l Dictionary* 1279 (unabridged ed 1993). We conclude that the legislature intended that dictionary definition to serve as the meaning of the word "lawful" in ORS 166.025(1)(e) for two reasons. First, the dictionary definition is the natural and ordinary meaning of the word "lawful." As noted, under *PGE*, 317 Or at 611, this court generally gives words of common usage their plain, natural, and ordinary meaning. Second, *amicus*'s proffered definition—that is, that "lawful order" encompasses *any* order that a duly appointed and authorized police officer issues—necessarily would include police orders that, at the time that they are issued, are contrary to substantive law. Such a reading divests the word "lawful" of much, if not all, of its substantive meaning. *Cf.* ORS 174.010 (if possible, court shall construe statute so as to give effect to all words contained therein).

In sum, we conclude that a person violates ORS 166.025(1)(e) if, with the conscious objective to cause, or with the awareness and conscious disregard of the substantial and unjustified risk of causing, public inconvenience, annoyance, or alarm, that person (1) congregates with others in a public place; and (2) refuses to comply with an order to disperse that a police officer issues and that is authorized by, and is not contrary to, substantive law. Having construed ORS 166.025(1)(e) to discern the legislature's intent, we now turn to defendants' facial constitutional challenges.

■ As noted above, defendants first challenge ORS 166.025(1)(e) on the ground that that statute is overbroad in violation of Article I, sections 8 and 26, of the Oregon Constitution and the First Amendment to the United States Constitution. Specifically, defendants contend that the statute does not preclude its application to persons permissibly exercising their rights to free expression under Article I, section 8, their rights to congregate in peaceable assembly under Article I, section 26, and their rights to free speech and peaceable assembly under the First Amendment.

■ ■ A statute is unconstitutionally overbroad if it purports to prohibit conduct that is constitutionally protected. *State v. Robertson*, 293 Or 402, 410, 649 P2d 569 (1982). As

this court explained in *Robertson*, a claim of overbreadth often can be resolved by interpreting the statute at issue; that is, in construing the statute, the court may conclude that the legislature did not intend its terms to operate with the breadth for which the challengers contend. *Id.*

As noted above, in interpreting ORS 166.025(1)(e), we have concluded that the statutory element "[c]ongregates with other persons" describes constitutionally protected conduct, and we further have concluded that the statutory culpable mental state does not preclude the application of ORS 166.025(1)(e) when a person intends to exercise constitutionally protected rights.

The state contends, however, that the term "lawful order" confines the application of ORS 166.025(1)(e) to circumstances in which its application does not infringe on constitutionally protected conduct. In other words, according to the state, police orders that infringe on rights protected under Article I, sections 8 and 26, and the First Amendment are not encompassed within the scope of the statute unless some attending circumstance—the commission of an assault, for example—rendered them constitutionally permissible. As we explain below, we do not agree with the state's assertion that the term "lawful order" confines the statute's application to conduct not otherwise protected by Article I, sections 8 and 26, of the Oregon Constitution.

The state is correct that the protection of speech and assembly under the Oregon Constitution is not absolute. The state argues, for example, that police lawfully may order a group of people to disperse when (1) they are engaged in criminal activity, *see, e.g.*, ORS 133.310(1) (authorizing police officers to make warrantless arrests when crimes committed in their presence or when probable cause exists to believe that particular person committed crime); (2) they create a threat of imminent serious physical injury, *see, e.g.*, ORS 163.190 (menacing statute); *State v. Garcias*, 296 Or 688, 697, 679 P2d 1354 (1984) (explaining that state may forbid placing another person in fear of imminent serious physical injury, unless conduct privileged); (3) they themselves are in danger, *see* ORS 133.033 (describing community caretaking function of police officers); and (4) they are a threat to the

integrity of a criminal investigation, *see, e.g.*, ORS 162.247(1)(a), (2) (interference with lawful duties of police officer is misdemeanor).

We agree that the statutes set out above, as well as others, provide the police with lawful authority to arrest a person engaging in the behavior prohibited by those statutes. Similarly, those statutes provide the police with authority to order a crowd of people engaging in the conduct prohibited by those statutes to cease that conduct and to disperse. The elements of ORS 166.025(1)(e), however, reach beyond the activity or conduct that gave rise to the police order to disperse, and criminalize conduct that is in response to the order to disperse. In other words, ORS 166.025(1)(e) proscribes conduct (congregating with others in a public place) that occurs after the order to disperse and that may be separate and apart from the conduct that might have given rise to the order to disperse. It is the range of the conduct that the statute criminalizes that must be tested against the constitutional rights of assembly and speech.

An individual refusing to comply with a lawful police order to disperse may react in a variety of ways. For example, an individual may continue the prohibited behavior (*e.g.,* fighting) that gave rise to the police order to disperse. In that case, the police could arrest the individual for engaging in that behavior and, assuming that the individual is congregating with others with the requisite mental state, could arrest the individual for disorderly conduct under paragraph (e) of ORS 166.025(1).

However, an individual may respond to an order to disperse, simply by ceasing the behavior that gave rise to the order to disperse, while continuing to congregate peaceably with others with one of the mental states proscribed by the statute. As we previously have noted, a person intending to exercise a constitutionally protected right such as peaceable assembly or expression coincidently may possess an intent to cause public inconvenience, annoyance, or alarm. In fact, individuals often undertake the exercise of protected rights such as assembly or expression with the intent of causing public inconvenience, annoyance, or alarm to those, such as

government leaders, who are exposed to the assembly or expression.

The difficulty with ORS 166.025(1)(e) is that a person ordered to disperse violates ORS 166.025(1)(e) regardless of whether or not any harm results from the refusal to disperse, the continued congregation with others, or the proscribed mental state. Thus, the statute applies to an individual who, in response to an order to disperse, abandons whatever activity in which they were engaged that made the order lawful in the first place, but continues peaceably to congregate with others, with the intent to cause public inconvenience, annoyance, or alarm or recklessly creates the risk of causing public inconvenience, annoyance or alarm. And, because ORS 166.025(1)(e) reaches that conduct, the legislature has stepped beyond the permissible regulation of damaging conduct or the harmful effects that may result from assembly or speech. *See, e.g., Spencer*, 289 Or 225 (holding variant of former disorderly conduct unconstitutional as direct restraint on speech rather than regulation or prevention of specified harm).

The foregoing construction of the statute's scope appears inescapable. There is nothing in the description of the elements of the statute that would permit this court faithfully to narrow the application of the statute to only conduct that the constitution does not protect. *See, e.g., Robertson*, 293 Or at 434-36 (examining whether statute is overbroad because it reaches areas of constitutionally privileged expression and whether narrowing construction possible to save statute from unconstitutional overbreadth); *City of Hillsboro v. Purcell*, 306 Or 547, 555-56, 761 P2d 510 (1988) (same). Simply put, congregating with others in a manner that does not cause harm, even when coupled with one of the mental states proscribed in the statute, is conduct that Article I, sections 8 and 26, protects.

The legislature has authorized the police through a multitude of statutes, a number of which we have described above, to prevent and regulate harmful effects that may result from expression or assembly. However, the variant of disorderly conduct that paragraph (e) of ORS 166.025(1) defines includes conduct and thought that does not produce a

harmful effect. Article I, sections 8 and 26, protect individuals from that form of governmental restraint.

We conclude that, on its face, ORS 166.025(1)(e) is unconstitutionally overbroad because it restrains conduct that Article I, sections 8 and 26, of the Oregon Constitution protects. The trial court correctly sustained defendants' demurrers.

The decision of the Court of Appeals is reversed. The judgments of the circuit court are affirmed.