Submitted on remand from the Oregon Supreme Court October 20, affirmed December 29, 2004, appellant's petition for reconsideration filed January 4 allowed by opinion April 13, 2005
See 199 Or App 124, 110 P3d 137 (2005)

# STATE OF OREGON,
## *Appellant,*

*v.*

# ROSE MARY ILLIG-RENN,
## *Respondent.*

## CR0014215; A114387

103 P3d 1178

Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General, and Ryan Kahn, Assistant Attorney General, for appellant.

David E. Groom, Acting Executive Director, and Tammy W. Sun, Deputy Public Defender, Office of Public Defense Services, for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant demurred to a charge of violating ORS 162.247(1)(b). Under that statute, "[a] person commits the crime of interfering with a peace officer if the person, knowing that another person is a peace officer * * * [r]efuses to obey a lawful order by the peace officer." The trial court allowed the demurrer, agreeing with defendant's argument that the statute is unconstitutionally overbroad and vague. We reversed and remanded, relying primarily on *State v. Ausmus*, 178 Or App 321, 37 P3d 1024 (2001), a case that the Supreme Court had already agreed to review but had not yet decided. *State v. Illig-Renn*, 189 Or App 47, 52, 73 P3d 307 (2003). Defendant in *Illig-Renn* also petitioned for Supreme Court review. While the petition was pending, the Supreme Court reversed this court's *Ausmus* decision. *State v. Ausmus*, 336 Or 493, 85 P3d 864 (2004). Shortly thereafter, the Supreme Court allowed review in *Illig-Renn,* vacated our decision, and remanded the case to us for reconsideration in light of its decision in *Ausmus. State v. Illig-Renn*, 337 Or 327, 99 P3d 290 (2004). On reconsideration, we affirm the trial court's judgment.

In *Illig-Renn*, we held that ORS 162.247(1)(b) survived a vagueness challenge under the state and federal constitutions because the statute was not unconstitutionally vague in all of its conceivable applications. 189 Or App at 50-51. In reaching that conclusion, we relied on *Ausmus*, 178 Or App 321, *State v. Chakerian*, 325 Or 370, 381, 938 P2d 756 (1997), and *State v. Compton*, 333 Or 274, 280, 39 P3d 833, *cert den*, 537 US 841 (2002). The Supreme Court in *Ausmus* did not deal with vagueness. We therefore presume that the Supreme Court vacated our decision based on our overbreadth analysis.

That analysis flowed from the premise that a statute is unconstitutionally overbroad if it prohibits a significant amount of constitutionally protected conduct or speech and it is not susceptible to a narrowing construction that would conform to legislative intent. *State v. Robertson*, 293 Or 402, 410, 649 P2d 569 (1982); *Ausmus*, 336 Or at 504-05. Beginning from that precept, our overbreadth analysis in *Illig-Renn*

consisted entirely of the following quotation from our opinion in *Ausmus*:

> " 'An order to disperse that violates a person's constitutional rights—for example, the rights of freedom of expression or freedom of assembly guaranteed by Article I, sections 8 and 26 of the Oregon Constitution, respectively—is not a "lawful" order. [The statute] prohibits refusal to comply only with a "lawful" order. We conclude that, on its face, the statute is not constitutionally overbroad.' "

*Illig-Renn*, 189 Or App at 49-50 (quoting *Ausmus*, 178 Or App at 326) (brackets in original). In other words, we held that ORS 166.025(1)(e),[1] a "disorderly conduct" statute punishing refusal to comply with a lawful order to disperse, can never be applied so as to punish constitutionally protected conduct because any order to disperse that violates a person's constitutionally protected rights is by definition not a lawful order. *Ausmus*, 178 Or App at 326.

The Supreme Court, beginning from the same premises, reached a different conclusion in *Ausmus*. It noted that the disorderly conduct statute "proscribes [constitutionally protected] conduct * * * that occurs after the order to disperse and that may be separate and apart from the [constitutionally unprotected] conduct that might have given rise to the order to disperse." *Ausmus*, 336 Or at 506. For example, a person may have congregated with a group of other persons for the purpose of peaceably listening to a political speech. Indeed, the lawful purpose of such an assembly may be to inflict alarm on government leaders by demonstrating to them widespread displeasure with their policies. While congregating for that purpose, a person might engage in constitutionally unprotected conduct such as fighting. An order to disperse in such a situation would be lawful, but

---

[1] ORS 166.025(1) provides, in relevant part:

"A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

"* * * * *

"(e) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse[.]"

"an individual may respond to an order to disperse, simply by ceasing the behavior that gave rise to the order to disperse, while continuing to congregate peaceably with others[.]

"* * * * *

"The difficulty with ORS 166.025(1)(e) is that * * * the statute applies to an individual who, in response to an order to disperse, abandons whatever activity in which they [*sic*] were engaged that made the order lawful in the first place, but continues peaceably to congregate with others, with the intent to cause public inconvenience, annoyance, or alarm or recklessly creates the risk of causing public inconvenience, annoyance or alarm. And, because ORS 166.025(1)(e) reaches that conduct, the legislature has stepped beyond the permissible regulation of damaging conduct or the harmful effects that may result from assembly or speech."

*Id.* at 506-07.

The disorderly conduct statute prohibits failure to obey a particular kind of lawful order: a lawful order to disperse directed to those who are congregated with others in a public place, intending to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof. The statute violates Article I, sections 8 and 26,[2] of the Oregon Constitution because it prohibits a significant amount of constitutionally protected behavior. The statute at issue in the present case, ORS 162.247(1)(b), contains a much more general prohibition: it proscribes *any* refusal to obey a peace officer, as long as the refuser knows that the person issuing the order is, in fact, a peace officer. Thus, the "interfering with a peace officer" statute reaches at least all—or nearly all—of the same protected speech and assembly that the "disorderly conduct" statute reaches.[3] A person attending a political rally and acting in a disorderly manner who responds to

---

[2] Article I, section 8, of the Oregon Constitution guarantees the right to "expression of opinion" and to "speak, write or print freely on any subject whatever * * *"; Article I, section 26, guarantees the right to "assembl[e] together in a peaceable manner to consult for their common good * * *."

[3] The exception might be situations in which the person who fails to disperse under the disorderly conduct statute does not know that the person issuing the order is a police officer. We need not and do not decide whether, in those circumstances, the statute could lawfully be applied.

a lawful order to disperse by ceasing the disorderly conduct but remaining where he or she is has violated ORS 162.247(1)(b) as well as ORS 166.025(1)(e). Thus, ORS 162.247(1)(b) is overbroad. Nor can we discern anything "that would permit this court faithfully to narrow the application of the statute to only conduct that the constitution does not protect." *Ausmus*, 336 Or at 501. Thus, ORS 162.247(1)(b) violates Article I, sections 8 and 26, of the Oregon Constitution.

Affirmed.