Argued and submitted May 4, decision of Court of Appeals reversed; judgment of
circuit court reversed, and case remanded to circuit court for further proceedings
August 24, 2006

STATE OF OREGON,
*Petitioner on Review,*

*v.*

ROSE MARY ILLIG-RENN,
*Respondent on Review.*

(CC CR0014215; CA A114387; SC S52633)

142 P3d 62

Ryan Kahn, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Tammy W. Sun, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Riggs, and Balmer, Justices.**

GILLETTE, J.

---

** Kistler, J., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

This case concerns the constitutionality of ORS 162.247(1)(b), a statute that makes it a crime to "refuse[ ] to obey a lawful order by [a] peace officer." Defendant, who was charged with that crime, demurred to the charge on the ground that the statute is unconstitutionally vague and overbroad. The trial court allowed the demurrer and the Court of Appeals ultimately affirmed the trial court's judgment. On the state's petition for review, we reverse the decision of the Court of Appeals and the judgment of the trial court and remand to the trial court for further proceedings.

Defendant was charged with violating ORS 162.247(1)(b) (1999), which provides:

"A person commits the crime of interfering with a peace officer if the person, knowing that another person is a peace officer

"* * * * *

"(b) Refuses to obey a lawful order by the peace officer."[1]

Defendant demurred to the charging instrument,[2] arguing that ORS 162.247(1)(b) is unconstitutionally overbroad and vague on its face, in violation of the free speech and assembly guarantees in the Oregon and United States constitutions. The trial court allowed the demurrer. The Court of Appeals initially reversed, *State v. Illig-Renn*, 189 Or App 47, 73 P3d 307 (2003) (*Illig-Renn I*), relying on its decision in *State v. Ausmus*, 178 Or App 321, 37 P3d 1024 (2001). In its decision in *Ausmus*, the Court of Appeals had rejected a criminal defendant's claim that a part of Oregon's disorderly conduct statute, ORS 166.025(1)(e), was unconstitutionally vague and overbroad to the extent that it made it a crime to "refuse[ ] to comply with a lawful order of the police to disperse" in certain circumstances. This court had allowed

---

[1] In 2005, the legislature amended ORS 162.247(1)(b) (1999) in ways that do not affect the present case. Hereinafter, we refer to the statute simply as ORS 162.247(1)(b).

[2] Because the case comes to us on a demurrer, the particular facts underlying the charge are irrelevant.

review in *Ausmus* before the Court of Appeals decided *Illig-Renn I.*

Ultimately, this court reversed the Court of Appeals decision in *Ausmus*: We held that the "refusal to disperse" provision in ORS 166.025(1)(e) was unconstitutionally overbroad because by its terms it restrained conduct (speech and assembly) that the Oregon Constitution protects. *State v. Ausmus*, 336 Or 493, 85 P3d 864 (2003). Shortly thereafter, we issued an order vacating the Court of Appeals decision in *Illig-Renn* and remanding the case to that court for reconsideration in light of this court's *Ausmus* decision. *State v. Illig-Renn*, 337 Or 327, 99 P3d 290 (2004) (*Illig-Renn II*).

The Court of Appeals then issued a second opinion in *Illig-Renn*, this time holding that ORS 162.247(1)(b) was unconstitutionally overbroad. *State v. Illig-Renn*, 196 Or App 765, 103 P3d 1178 (2004) (*Illig-Renn III*). The Court of Appeals reached that conclusion by comparing ORS 162.247(1)(b) with the disorderly conduct provision at issue in *Ausmus*:

> "The disorderly conduct statute prohibits failure to obey a particular kind of lawful order: a lawful order to disperse directed to those who are congregated with others in a public place, intending to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof. The statute violates Article I, sections 8 and 26, of the Oregon Constitution because it prohibits a significant amount of constitutionally protected behavior. The statute at issue in the present case, ORS 162.247(1)(b), contains a much more general prohibition: it proscribes *any* refusal to obey a peace officer, as long as the refuser knows that the person issuing the order is, in fact, a peace officer. Thus, the 'interfering with a peace officer' statute reaches at least all—or nearly all—of the same protected speech and assembly that the 'disorderly conduct' statute reaches."

*Illig-Renn III*, 196 Or App at 769 (emphasis in original). The court then went on to hold that, because ORS 162.247(1)(b) necessarily also reached a significant amount of constitutionally protected behavior, the statute was unconstitutionally overbroad. *Id.* at 769-70.

Shortly thereafter, the Court of Appeals issued yet another *Illig-Renn* opinion, this time on the state's petition for reconsideration. The court reaffirmed its holding in *Illig-Renn III* and specifically rejected the state's objection that, according to the analysis used in Article I, section 8, cases, ORS 162.247(1)(b) is not a proper subject of a facial overbreadth challenge because it does not expressly proscribe constitutionally protected conduct. *State v. Illig-Renn*, 199 Or App 124, 110 P3d 137 (2005) (*Illig-Renn IV*). The court concluded that nothing in the Article I, section 8, cases foreclosed the possibility of a facial challenge to a "speech-neutral" statute and that, in any event, there was no basis for concluding that the limitations on overbreadth analysis developed in the context of Article I, section 8, cases would carry over to challenges (like that raised by defendant in the *Illig-Renn* cases) under Article I, section 26, of the Oregon Constitution. *Id.* at 127-28.

The state sought review of the Court of Appeals decisions in *Illig-Renn III* and *Illig-Renn IV*, arguing that this court's cases clearly establish that only statutes that expressly proscribe expression are subject to facial overbreadth challenges under Article I, section 8, and that, logically, a parallel rule should apply to right of assembly analysis under Article I, section 26. The state also argued that what it described as the Court of Appeals' "novel" approach to overbreadth in *Illig-Renn III* and *IV* had no basis in the law and unreasonably expanded the idea of overbreadth. We allowed the state's petition to consider those arguments and also to consider defendant's alternative contention that, if ORS 162.247(1)(b) is not overbroad, it nonetheless is unconstitutional on its face because it is impermissibly vague.

■■ We turn first to the issue of overbreadth. In general parlance, a statute is said to be "overbroad" if, by its terms, it reaches conduct that is constitutionally protected and the statute is not susceptible to a narrowing construction. *See, e.g., Ausmus*, 336 Or at 504-07 (explaining and applying concept). However, not every statute that is theoretically overbroad will be subject to invalidation on that ground. As we shall explain, a statute that proscribes protected conduct only at its margins remains valid, although the statute's application to particular constitutionally protected conduct may be challenged successfully on an "as applied" basis.

■ Defendant argues that ORS 162.247(1)(b) is facially overbroad. The Court of Appeals, in considering that argument, opined that the courts should invalidate a statute for facial overbreadth if "it prohibits a significant amount of constitutionally protected conduct or speech and it is not susceptible to a narrowing construction that would conform to legislative intent." *Illig-Renn III*, 196 Or App at 767. As noted, the Court of Appeals then concluded that ORS 162.247(1)(b) was facially overbroad. The court relied on this court's decision in *Ausmus*, reasoning that, because this court had concluded in *Ausmus*, 336 Or at 506-07, that a different statute—ORS 166.025(1)(e)—reaches a significant amount of constitutionally protected conduct and, thus, was overbroad, and because (in the view of the Court of Appeals) ORS 162.247(1)(b) reaches all or most of the same conduct and more, it necessarily follows that ORS 162.247(1)(b) reaches a significant amount of conduct that is constitutionally protected and must therefore be unconstitutionally overbroad. *Id.* at 768-70.

The state contends, however, that the Court of Appeals' facial overbreadth analysis is misplaced because ORS 162.247(1)(b) is not the sort of statute that is susceptible to a facial challenge under the Oregon Constitution. The state argues that, under *City of Eugene v. Miller*, 318 Or 480, 871 P2d 454 (1994), *State v. Plowman*, 314 Or 157, 838 P2d 558 (1992), *cert den*, 508 US 974 (1993), and *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), this court analyzes statutes for facial overbreadth only if they *expressly* restrict constitutionally protected conduct. It then argues that this court analyzes statutes like ORS 162.247(1)(b), which do not refer to constitutionally protected conduct at all, only to determine whether they violate the constitution *as applied*.

Notably, when the state raised that same argument before the Court of Appeals, that court acknowledged that both *Robertson* and *Miller* contained statements suggesting that statutes that do not by their terms forbid particular forms of expression (called "speech-neutral" statutes by the Court of Appeals) are to be analyzed to determine whether they violate the constitution "as applied." However, the court ultimately concluded that none of those statements from *Robertson* and *Miller* foreclosed the possibility of a facial challenge to such statutes. The court also suggested that the

statements pertained specifically to free expression challenges and arguably were inapplicable to challenges invoking the free assembly guarantee of Article I, section 26. *Illig-Renn IV*, 199 Or App at 127-28. Ultimately, the Court of Appeals invited this court to address that issue explicitly: "If speech-neutral statutes may not be challenged facially under Article I, section 8, and that rule extends into the area of free assembly so as to override the logic of *Ausmus* and *Illig-Renn III*, it is up to the Supreme Court to say so." *Id.* at 128.

■ We respond to that invitation by stating outright that we already have "said so." First, our prior cases *do* foreclose the possibility of a facial challenge under Article I, section 8, to a "speech-neutral" statute. In *Robertson*, this court repeatedly signaled that a statute is subject to a facial challenge only if it expressly or obviously proscribes expression: Marginal and unforeseen applications to speech and expression are left for judicial exclusion through application of the constitutional rule to the specific facts of a given case. 293 Or at 417. In *Plowman*, this court clarified that point, noting that *Robertson* essentially describes three categories of statutes that implicate expression:

> "In *State v. Robertson* * * * this court established a framework for evaluating whether a law violates Article I, section 8. First, the court recognized a distinction between laws that focus on the *content* of speech or writing and laws that focus on the pursuit or accomplishment of *forbidden results*. This court reasoned that a law of the former type, a law 'written in terms directed to the substance of any "opinion" or any "subject" of communication,' violates Article I, section 8 [unless the statute falls within a historical exception].

> "* * * * *

> "Laws of the latter type, which focus on forbidden results, can be divided further into two categories. The first category focuses on forbidden effects, but expressly prohibits expression used to achieve those effects. * * * Such laws are analyzed for overbreadth:

> "* * * * *

"The second kind of law also focuses on forbidden effects, but without referring to expression at all. Of that category, this court wrote:

> " 'If [a] statute [is] directed only against causing the forbidden effects, a person accused of causing such effects by language or gestures would be left to assert * * * that the statute could not constitutionally be applied to his particular words or other expression, not that it was drawn and enacted contrary to article I, section 8.' "

*Plowman*, 314 Or at 163-64 (emphasis in original; second and third brackets in original; citations omitted); *see also Outdoor Media Dimensions v. Dept. of Transportation*, 340 Or 275, 300-01, 132 P3d 5 (2006) (illustrating doctrine).

Finally, in *Miller*, this court used the limitation on facial challenges to which *Robertson* and *Plowman* had alluded: We declined to analyze the city ordinances at issue in that case for facial overbreadth because they did not, "by their terms, purport to proscribe speech or writing as a means to avoid a forbidden effect." *Miller*, 318 Or at 490. Thus, the Court of Appeals' express reservation as to whether this court truly has meant to say that "speech-neutral statutes may not be challenged facially under Article I, section 8," is not well taken. Put differently, and at least in the context of challenges under Article I, section 8, of the Oregon Constitution, this court has limited facial overbreadth analysis to statutes that more or less expressly identify protected speech as a statutory element of the offenses that they define, *Robertson*, 293 Or at 415, or that otherwise proscribe constitutionally protected speech "in [their] own terms," *id.* at 417 (quoting *State v. Blair*, 287 Or 519, 523, 601 P2d 766 (1979)). And, more to the point, we have stated specifically that, when a statute does *not* refer to protected speech "in terms," it is not an appropriate subject for overbreadth analysis and may only be challenged "as applied." *Miller*, 318 Or at 490.

The foregoing does not mean that we will ignore a clear case of facial unconstitutionality or overbreadth merely because the statute manages to avoid any direct reference to speech or expression. As this court acknowledged in *State v. Moyle*, 299 Or 691, 699, 705 P2d 740 (1985), "[t]he constitutional prohibition against laws restraining speech or writing

cannot be evaded simply by phrasing statutes so as to prohibit 'causing another person to see' or 'to hear' whatever [speech or expression] the lawmakers wish to suppress." But, in general, we will not consider a facial challenge to a statute on overbreadth grounds if the statute's application to protected speech is not traceable to the statute's express terms. The state is correct insofar as it invokes that rule. The Court of Appeals erred in declining to follow that rule.

■       As we have explained, the Court of Appeals, in its opinion on reconsideration, also suggested that, to the extent that our Article I, section 8, cases may express the limitation on facial challenges that the state advances, that limitation does not necessarily apply to challenges under Article I, section 26. However, our opinion in *Ausmus* is to the contrary. There, the defendant's facial overbreadth challenge to the disorderly conduct statute was brought under *both* sections 8 *and* 26 of Article I, yet nothing in the opinion suggests that a distinct analysis was or should be applied to the section 26 challenge. In fact, this court in *Ausmus* applied a single, undifferentiated overbreadth analysis that began with the fact that the statute at issue, ORS 166.025(1)(e), expressly referred to conduct encompassed within Article I, section 26, and the First Amendment, and ended with the conclusion that the court could not narrow the statute to preclude application to constitutionally privileged conduct in a way that was faithful to the legislature's apparent intent. *See generally Ausmus*, 336 Or at 499-507 (explaining approach). That parallel treatment was a reflection of the fact that the freedoms that sections 8 and 26 of Article I guarantee, speech and assembly, are closely associated. Indeed, the right of assembly guaranteed by the latter provision protects an important aspect of the freedom of expression protected by Article I, section 8—it assures that those who speak may have an audience. *See Ausmus*, 336 Or at 506-07 (suggesting that analysis). We think that it follows that the two constitutional provisions are subject to the same analytical framework, including that part of the framework that limits facial overbreadth challenges to statutes that "in terms" proscribe constitutionally protected conduct.

        In summary, the state is correct that only statutes that by their terms proscribe the exercise of the constitutionally protected rights of assembly or expression are susceptible to a facial overbreadth challenge under Article I, sections

8 and 26. Of course, the state may apply statutes that do *not* expressly or obviously refer to assembly or expression in a way that restricts the rights guaranteed by sections 8 and 26 in some circumstances, but challengers must attack those applications of the statutes, and not the statutes themselves.

It follows from the foregoing that the Court of Appeals erred in its analysis of defendant's overbreadth challenge under the Oregon Constitution in the present case. A person charged with violating that statute is left to challenge the constitutionality of its application to his or her particular conduct.

■ Before this court, defendant argues in the alternative that ORS 162.247(1)(b) *does* expressly restrain expression in violation of Article I, section 8. In that regard, defendant suggests that the statute describes conduct—"refus[ing] to obey"—that necessarily encompasses speech or expression. She argues, in particular, that "[t]o refuse is to express unwillingness to comply or accept; invariably, it conveys a message of opposition or dissent whether by verbal means or an expressive act." However, as we have stated before, the fact that persons seek to convey a message by their conduct, that words accompany their conduct, or that the very reason for their conduct is expressive, does not transform prohibited conduct into protected expression or assembly. *See, e.g, Huffman and Wright Logging Co. v. Wade*, 317 Or 445, 458, 857 P2d 101 (1993) (making that point). In the end, ORS 162.247(1)(b) is concerned with the *act* of refusing or failing to obey a lawful order: The fact that such acts also may be intended to "send a message" is irrelevant.[3] We hold that ORS 162.247(1)(b) is not facially overbroad under either

---

[3] We do not deny that the term "refuse" sometimes is used to convey a primarily expressive act. According to *Webster's Third New Int'l Dictionary* (unabridged ed 2002) at 1910, one definition of the term "refuse," is to *"show or express* a positive unwillingness to do or comply with [something asked, demanded or expected]." (Emphasis supplied.) But the same dictionary offers other definitions that have no overtly expressive content, *e.g.*, "decline" and "deny." *Id.*

It is clear that when ORS 162.247(1)(b) refers to a person "refus[ing] to obey" a peace officer's lawful order, the statute is concerned primarily with the *act* of resisting the order and not with the idea of unwillingness communicated by that act. Defendant has suggested that, if the legislature intended that meaning, it could have chosen a more speech neutral term, such as "fails to obey." However, it would seem that the word "refuse" was chosen not for its expressive connotation but because it conveys a different nuance, *viz.*, that the failure to obey must be knowing or intentional.

Article I, section 8, or Article I, section 26, of the Oregon Constitution.

We turn, next, to defendant's claim that the statute is facially overbroad under the First Amendment to the United States Constitution. That discussion need not detain us long. For purposes of the First Amendment, courts may invalidate a statute for facial overbreadth only if the statute proscribes a substantial amount of protected conduct in relation to its legitimate sweep. *See Broadrick v. Oklahoma*, 413 US 601, 615, 93 S Ct 2908, 37 L Ed 2d 830 (1973) (so stating). Defendant contends that ORS 162.247(1)(b) is overbroad under that standard because "[i]t reaches vast amounts of constitutionally protected conduct of any individual engaging in First Amendment activity who refuses an officer's order that affects that conduct." In support of that argument, defendant provides various examples of acts expressing defiance and opposition that, according to defendant, would fall within the literal terms of the statute.

The problem with defendant's argument is that it fails to acknowledge that the statute pertains only when a person refuses to obey a police officer's "lawful" order. The inclusion of that word removes from the statute's sweep any refusal to follow an order that is inconsistent with the substantive law, including constitutional provisions guaranteeing the right of free expression and assembly. It may be true that the statute still might literally apply to some instances of constitutionally protected conduct, even when the "lawful order" requirement is taken into account (including a refusal to obey an order to disperse under circumstances like those discussed in this court's opinion in *Ausmus*, 336 Or at 505-07). However, any such instances hardly could be called "substantial" when compared to the statute's legitimate sweep. We therefore hold that, consistent with the federal overbreadth analysis, the statute is not subject to invalidation for facial overbreadth under the First and Fourteenth Amendments.

We turn to defendant's contention that ORS 162.247(1)(b) is unconstitutionally vague. Defendant's arguments in that regard focus on the statutory term "lawful order." She contends that that term is impermissibly vague in two respects: (1) it permits arbitrary and even retroactive

punishment and delegates uncontrolled discretion to judges, juries, and law enforcement personnel to decide what and whom to punish, thereby violating the equal privileges guarantee of Article I, section 20, of the Oregon Constitution, the *ex post facto* prohibition of Article I, section 21, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and (2) it fails to provide fair warning of what kind of orders are unlawful and must be obeyed, also in violation of the Due Process Clause.[4]

We turn, first, to the related issues of arbitrary or unequal application and uncontrolled discretion. In *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985), this court described that aspect of the vagueness problem:

"[A] criminal statute must not be so vague as to permit a judge or jury to exercise uncontrolled discretion in punishing defendants, because this offends the principle against *ex post facto* laws embodied in Article I, section 21, of the Oregon Constitution. The equal privileges and immunities clause is also implicated when vague laws give unbridled discretion to judges and jurors to decide what is prohibited in a given case, for this results in the unequal application of criminal laws. A criminal statute need not define an offense with such precision that a person in every case can determine in advance that specific conduct will be within the statute's reach. However, a reasonable degree of certainty is required by Article I, sections 20 and 21."

(Citations omitted.)

Defendant contends that ORS 162.247(1)(b) is unconstitutionally vague under that standard, because the term "lawful order" is "indeterminate" and "draws its content from the infinitely vast array of situations found in police-citizen encounters." We disagree. In our view, the term "lawful order" itself grants no discretion and, thus, no opportunity for unequal application, to the persons who are charged with enforcing and administering that law.[5]

---

[4] The "fair notice" component of the vagueness analysis is not an issue under the Oregon Constitution. *See generally Delgado v. Souders*, 334 Or 122, 144 n 12, 46 P3d 729 (2002) (although prior cases discussed "fair notice" element of vagueness doctrine, those discussions were concerned with the general nature of the doctrine rather than with any "fair notice" requirement under the Oregon Constitution).

[5] Of course, police officers may have discretion in deciding not to arrest a person who literally has violated ORS 162.247(1)(b), but the statute itself is not the source of that discretion.

The term is similar to the one that this court considered in *State v. Florea*, 296 Or 500, 677 P2d 698 (1984). There, the defendant challenged as vague a statute that made it criminal for a public servant to "knowingly perform[ ] an act constituting an unauthorized exercise in his official duties." In holding that the term "unauthorized" did not make the statute vague, this court focused on the fact that the term looked to standards contained in outside sources of law:

> "The statute does not leave a judge or, under proper instructions, a jury with unconstrained discretion to define a crime. Even though a question of a public servant's authority may be one of first impression in a court, it is governed by sources of law and delegated authorization outside the criminal code itself, sources to which a public official in any event must turn in order properly to understand his job. If there is vagueness, it does not lie in [the official misconduct statute]."

*Id.* at 504.

For the same reason, the term "lawful order" in ORS 162.247(1)(b) does not create an opening for unequal or discretionary application. It leaves nothing to the ad hoc judgment of the individual police officer, judge, or jury but, instead, invokes ascertainable standards from an outside source, *i.e.*, the substantive laws of this state. It does not invite unequal treatment in violation of Article I, section 20, of the Oregon Constitution or *ex post facto* application in violation of Article I, section 21.

■ Neither does the phrase "lawful order" create an unlawful delegation issue under the Due Process Clause of the Fourteenth Amendment. For due process purposes, a statute is vague in that sense if it either contains no identifiable standard, *Kolender v. Lawson*, 461 US 352, 358, 103 S Ct 1855, 75 L Ed 2d 903 (1983), or employs a standard that relies on the shifting and subjective judgments of the persons who are charged with enforcing it, *City of Chicago v. Morales*, 527 US 41, 62, 119 S Ct 1849, 144 L Ed 2d 67 (1999). As just explained respecting the issue of unequal or discretionary application, however, ORS 162.247(1)(b) does neither of those things.

■■ ■■ That leaves us to consider whether ORS 162.247(1)(b) is vague in the sense that it fails to provide fair warning, in violation of the Due Process Clause of the Fourteenth Amendment. In the past, we have described that "fair warning" requirement in the following terms: "The terms of a criminal statute must be sufficiently explicit to inform those subject to it of what conduct on their part will render them liable to its penalties." *Graves*, 299 Or at 195. In assessing a claim that a criminal statute fails to give fair warning, we employ the standard that federal courts have applied to criminal and quasi-criminal statutes—whether the statute would "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *Grayned v. City of Rockford*, 408 US 104, 108, 92 S Ct 2294, 33 L Ed 2d 222 (1972).

Defendant contends that ORS 162.247(1)(b) fails to give that degree of fair warning because the touchstone of guilt or innocence—the lawfulness of the peace officer's order—requires sophisticated legal analysis and "ultimately depends on the factual circumstances and conduct giving rise to the order." Defendant suggests that a "person of ordinary intelligence" would not be able, at the relevant time, to perform the analysis that would be required to determine whether an order was lawful:

"To know what this law requires, a person must necessarily conduct sophisticated legal analysis to determine whether an order was lawful. Specifically, the person must (1) possess substantive knowledge of statutory and constitutional law, (2) apply that knowledge during an ongoing encounter with an officer, and (3) determine whether the order is constitutional. Although ignorance of the law is not a cognizable defense against criminal liability, comprehending the law here is a task more suited to a constitutional scholar than a person of ordinary intelligence untutored in the law."

That argument, however, merely expands on an old saw—that the common man cannot reasonably be expected to know and understand the complexities of the law. We generally have rejected such arguments, instead presuming that publication and dissemination of a substantive law is sufficient to inform the public of its import. *See, e.g., Bartz v. State*

*of Oregon*, 314 Or 353, 359-60, 839 P2d 217 (1992) (so stating). And, to the extent that the lawfulness of an official's order can be ascertained by resort to the published substantive law, the ordinary citizen must be presumed to know and understand the general parameters of the term "lawful order." We scarcely could do otherwise: If the extent or complexity of the law excuses obedience, it is no law. In short, we hold that the fact that ORS 162.247(1)(b) only requires the public to obey a peace officer's "lawful" orders does not deny ordinary citizens a reasonable opportunity to know what conduct is prohibited.

■    Defendant argues, finally, that ORS 162.247(1)(b) is rendered facially vague by the addition of an exception to the general rule stated in that section. In particular, after defining the crime of "interfering with a police officer" at paragraph (1)(b), and stating in subsection (2) that the crime is a Class A misdemeanor, subsection (3) provides:

> "This section does not apply in situations in which the person is engaging in
>
> "(a)   Activity that would constitute resisting arrest under ORS 162.315; or
>
> "(b)   Passive resistance."

That is, paragraph (3)(b) of the statute defines conduct that is *not* a violation of its substantive prohibition. Defendant notes, however, that the term "passive resistance" is undefined and argues that it is unclear whether the term encompasses only nonviolent resistance to arrest or any nonviolent refusal to obey an order. Defendant contends that the inclusion of such a vague exception to the prohibition at ORS 162.247(1)(b) renders the prohibition itself unconstitutionally vague.

Assuming that a statutory prohibition that is clear on its face can be deemed unconstitutionally vague on the ground that another provision that lessens the statute's sweep is unclear, defendant has not demonstrated that ORS 162.247(1)(b) is impermissibly vague on that ground. Whatever the term "passive resistance" may encompass, it speaks to particular fact patterns that will exist at the fringes of the "lawful order" inquiry and, as such, may be occasions for

arguments about the precision of jury instructions. Put differently: While there may be room to argue about whether certain conduct does or does not fall within the "passive resistance" exception, the exception is not broad enough to obfuscate the meaning of the overall prohibition on "refus[ing] to obey a lawful order by [a] peace officer." As we previously have indicated, absolute precision is not required to overcome a facial vagueness challenge.

We hold that ORS 162.247(1)(b) is not facially overbroad or vague in any of the ways that defendant has argued. It follows that the circuit court erred in allowing defendant's demurrer on those grounds and the Court of Appeals erred in affirming the circuit court's decision.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.