Argued and submitted March 31, Grants Pass High School, Grants Pass, affirmed June 3, petition for review denied November 12, 2015 (358 Or 248)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERIC CARL NAVICKAS,
*Defendant-Appellant.*

Jackson County Circuit Court
113239MI; A154558

351 P3d 801

Ernest G. Lannet, Chief Deputy Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services.

Timothy A. Sylwester, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jona J. Maukonen, Assistant Attorney General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment convicting him of a single count of interfering with a peace officer, ORS 162.247. Defendant assigns error to the trial court's denial of his motion for a judgment of acquittal (MJOA) based on the state's failure to prove that he disobeyed a "lawful" order. He contends that the police officer's order was unlawful because the officer acknowledged that he would not have issued the order if defendant's group had obtained a permit under a city permit scheme, which the trial court later held was unconstitutional. Because we conclude that the police officer's order nevertheless was lawful on its face, we affirm.

We review the facts in the light most favorable to the state, which prevailed below, and state them consistently with that standard. *See State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998).

Defendant was the leader of a group of 30 to 40 individuals who were participating in an environmental protest in downtown Ashland. Using a bullhorn, defendant told the group to move the protest into the streets. The group followed defendant into Main Street, the central three-lane thoroughfare in Ashland. The majority of the protesters stayed in the right-hand lane, but several of them, along with the large banner they were carrying, spilled over into the middle lane. At the time of the protest, it was raining heavily, visibility on the road was poor, and road conditions were slick. The street also was busy with evening traffic.

Officer Perrone arrived at the scene and asked defendant to move his group off the street. Defendant responded by "screaming and shouting" profanities. Perrone walked with defendant for the next block, asking him to direct his group out of the street and back onto the sidewalk, but defendant refused to comply. Perrone went to his patrol car and followed behind the protest with his lights on in order to protect the protesters from traffic. When traffic began to pile up, Perrone again approached defendant and ordered him out of the street. Defendant again responded with "more profanity, yelling and screaming." Perrone told defendant that he was going to arrest him for disorderly conduct, but, after defendant began to resist, Perrone chose not

to arrest defendant because he believed it would make "an already very unsafe situation worse." Defendant returned to the march, and the protest dispersed approximately four blocks after it began. Defendant was later charged with interfering with a peace officer and disorderly conduct.

At the time of the protest, the City of Ashland had adopted a resolution that required permits for parades, marches, or protests. In order to comply with the requirements, groups had to apply for permits weeks in advance, buy insurance for the event, obtain signatures from abutting residents and businesses, and pay anywhere from $130 to $1,000 for the permit. Defendant did not obtain a permit for the protest at issue in this case because of the cost and because he thought that the city could not constitutionally keep citizens from exercising their free speech rights by forcing them to pay excessive fees.

Defendant testified that the group protested in the street in order to make the protest "effective" because, when the group was protesting on the sidewalk, people had to be in a single-file line and the awnings over the sidewalks prevented the protesters from holding banners. Perrone testified that, if defendant had obtained a permit to conduct the protest, Perrone would not have stopped it but would have escorted the group to ensure their safety.

At the close of evidence, defendant moved for a judgment of acquittal on the count of interfering with a peace officer on the grounds that the order that defendant refused to obey was not "lawful."[1] Defendant argued that the city permitting scheme was unconstitutional, that Perrone testified that he would not have issued the order if the group had obtained a permit, and that the order was therefore unlawful. The trial court determined that the permit scheme was unconstitutional, but denied defendant's MJOA, stating that the jury could find that Perrone's order was motivated by safety concerns or that he was primarily motivated to enforce the permitting process. The court advised the jury that the permit scheme was unconstitutional. Defendant

---

[1] Under the applicable statute, "[a] person commits the crime of interfering with a peace officer" if he refuses to obey a "lawful order" by someone he knows is a peace officer. ORS 162.247(1)(b).

ultimately was convicted of interfering with a peace officer, though he was acquitted of disorderly conduct.

Defendant assigns error to the trial court's denial of his MJOA. He contends that Perrone's order was not "lawful" and that, therefore, the trial court should have acquitted him of interfering with a peace officer. We review "to determine whether a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *Hall*, 327 Or at 570.

The applicable statute, ORS 162.247(1)(b), states, "A person commits the crime of interfering with a peace officer * * * if the person, knowing that another person is a peace officer * * * [r]efuses to obey a lawful order by the peace officer[.]" An order is "lawful" if it is authorized by, and is not contrary to, substantive law. *State v. Ausmus*, 336 Or 493, 504, 85 P3d 864 (2004). The central issue in this case is whether Perrone's order to defendant was "lawful."

Defendant argues that Perrone's order was not "lawful" because Perrone testified that he would not have asked defendant to move off of the street but would have escorted the protest—despite the rain and the traffic—if the group had obtained a permit. Because the trial court determined that the permit scheme was unconstitutional, defendant contends that the state failed to prove that defendant disobeyed a "lawful" order. The state responds that, as the trial court concluded, a factfinder could infer from the evidence that Perrone ordered defendant out of the street for safety reasons, at least in part. According to the state, that Perrone might have taken a different approach had a permit been obtained does not make his order unlawful.

"ORS 162.247(1)(b) is concerned with the *act* of refusing or failing to obey a lawful order." *State v. Illig-Renn*, 341 Or 228, 237, 142 P3d 62 (2006) (emphasis in original). The term "'lawful order' in ORS 162.247(1)(b) does not create an opening for unequal or discretionary application"; further, "[i]t leaves nothing to the ad hoc judgment of an individual police officer * * * but, instead, invokes ascertainable standards from an outside source, *i.e.*, the substantive laws of the state." *Id.* at 240.

When examining whether an order is "lawful," or in compliance with "the substantive laws of the state," we look at whether the order at issue was lawful on its face. In *State v. Neill*, 216 Or App 499, 508, 173 P3d 1262 (2007), we concluded that the officers' orders to the defendant to sit down and not move, made in the interest of officer safety, were "lawful," even though the officers were in the defendant's home illegally. Similarly, in *State v. Rodinsky*, 60 Or App 193, 196, 653 P2d 551 (1982), we determined that the officer had the authority to order the defendant to return to her car, stating that,

"[e]ven if the traffic stop was illegal, that did not immunize [the defendant] from the consequences of her subsequent conduct and did not deprive the officer of the authority to respond to those actions by appropriate orders. The lawfulness of the order disobeyed is to be judged independently of the validity of the initial police-citizen confrontation."

In this case, then, neither the fact that Perrone would have acted differently if defendant had obtained a permit nor the fact that the permitting scheme was later declared unconstitutional is pertinent to our review. Independently evaluating Perrone's order, we conclude that a rational factfinder could have found that Perrone had the authority to instruct defendant to move off of the street, particularly in light of the safety concerns present of a protest in the street in light of heavy rain, busy traffic, and poor driving conditions. *See State v. Bistrika*, 261 Or App 710, 718, 322 P3d 583 (2014) (concluding that a rational factfinder could have found that deputies' orders were reasonable in light of officer safety concerns). Thus, Perrone's order was "lawful" and a reasonable factfinder could have found defendant guilty of interfering with a peace officer because he disobeyed a lawful order. The trial court did not err in denying defendant's MJOA.

Affirmed.