Argued and submitted March 30, judgments of conviction for first-degree kidnapping, fourth-degree assault, second-degree assault, and first-degree burglary vacated; remanded for resentencing pursuant to ORS 138.222(5) with instructions (1) to enter a judgment of conviction for first-degree kidnapping reflecting that defendant was convicted on both theories, (2) to enter a judgment of conviction for second-degree assault, and (3) to enter a judgment for first-degree burglary reflecting that defendant was convicted on both theories; otherwise affirmed October 12, 2005, petition for review allowed February 21, 2006 (340 Or 157)

STATE OF OREGON,
*Respondent,*

*v.*

NATHANIEL DALE WHITE,
*Appellant.*

CR0001843; A114793

121 P3d 3

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. On the opening brief were David E. Groom, Acting Director, and Steven V. Humber, Deputy Public Defender. With her on the supplemental brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services. Nathaniel Dale White filed the supplemental brief *pro se*.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Breithaupt, Judge pro tempore.

EDMONDS, P. J.

**EDMONDS, P. J.**

Defendant appeals his convictions for two counts of kidnapping in the first degree, ORS 163.235; one count of assault in the second degree, ORS 163.175; two counts of assault in the fourth degree, ORS 163.160; two counts of burglary in the first degree, ORS 164.225; one count of menacing, ORS 163.190; and one count of interfering with a peace officer, ORS 162.247. We affirm in part, vacate in part, and remand with instructions for resentencing.

Because defendant was convicted of the above crimes, we state the facts in the light most favorable to the state. The charges against defendant all pertain to defendant's assault on his girlfriend. Defendant and the victim had met each other a year earlier in Watsonville, California. Some time within that year, they moved to Oregon together and lived with some friends, until they eventually got their own apartment together in July 2000. One month later, defendant was arrested, and the victim obtained a restraining order against defendant. While defendant was still in jail, the victim moved to another apartment within the same complex. She told her new neighbors, who lived on the floors above and below her, "that if they ever heard any screaming or any disturbance from my apartment to please call 911 without checking."

The morning after defendant was released from jail, the victim saw defendant walking toward her as she left her apartment. She began to cry and asked him what he wanted. He requested that she not call the police and then began to leave the parking area. The victim returned to her apartment, locked the doors, and waited "about 5 or 10 minutes." She checked the peephole in her door but did not see defendant. When she opened the door, defendant, who had been crouched down beside the door, shoved it open and knocked her back into the apartment. As she screamed, defendant entered the apartment, locked the door, covered her mouth, put his hands around her throat and began to squeeze. He told her, "These games will stop." Defendant then told her that she was not to scream anymore, and when she nodded her head that she understood, he uncovered her mouth.

Defendant pulled the victim by the arm and said to her, "We're going to close the blinds." He led her toward the sliding glass door in the rear of the apartment. At some point, defendant let the victim go in order to close the blinds to a separate window, and he ordered her to close the blinds to the sliding glass door. Instead, she unlocked the sliding door and ran out to the balcony. She grabbed the railing and, according to her testimony, "began screaming for my neighbors to call 911, call the police." Defendant grabbed the victim's legs and began pulling her back inside the apartment while the victim tried to hold onto the railing.

By this time, other residents of the apartment building had come outside in response to the victim's screaming, and the police were called. One neighbor witnessed defendant punch the victim until she went down on her side with her head resting up next to the balcony. The neighbor then watched while defendant stomped on the victim's head at least three times. Another neighbor testified that defendant stomped on the victim's head and body, while "cussing" and yelling at her. The neighbor also testified that she and others yelled at defendant to stop, but he did not acknowledge them.

Eventually, defendant fled, and later, he was arrested. As a result of defendant's assault, the victim suffered, among other things, a fractured right wrist, facial fractures, a shoulder injury, a cut lip, and broken teeth that required extensive dental work. Defendant was charged with two counts of kidnapping in the first degree (Counts one and two), one count of assault in the first degree (Count three), three counts of assault in the second degree (Counts four, five, and six), two counts of burglary in the first degree (Counts seven and eight), and one count each of menacing (Count nine), resisting arrest (Count ten),[1] and interfering with a peace officer (Count 11). After a trial to the court without a jury, defendant was found guilty of Counts one, two, seven, eight, nine, and 11. He was also found guilty on Count three of the lesser-included offense of second-degree assault and on Counts four and five of the lesser-included offense of

---

[1] The trial court granted defendant's motion for a judgment of acquittal on the resisting arrest count.

fourth-degree assault. The court found him not guilty on Count six.

■     In his first assignment of error, defendant argues that the trial court erred in denying his motion for a judgment of acquittal as to Count 11, interfering with a peace officer, ORS 162.247. He argues that the statute is unconstitutionally vague as applied to the facts of defendant's case, and that the statute is facially overbroad. However, defendant failed to preserve in the trial court the issues that he raises on appeal, and we therefore decline to address them. Nonetheless, defendant argues that the trial court committed plain error under the holdings in *State v. Ausmus,* 336 Or 493, 85 P3d 864 (2004), and *State v. Illig-Renn,* 196 Or App 765, 103 P3d 1178 (2004). We decline to exercise our discretion to review defendant's assignment as error apparent on the face of the record. *See* ORAP 5.45. The trial court was given no indication that defendant was even making an overbreadth argument, and, certainly, he gave no indication of the particular argument with regard to vagueness that he now makes on appeal. We do not believe it would serve the policies underlying the general rule of requiring preservation to review defendant's assignment on a plain error basis, given the nature of his assertion that his conduct was constitutionally protected. *Ailes v. Portland Meadows, Inc.,* 312 Or 376, 382 n 6, 823 P2d 956 (1991).

■     In his first four supplemental assignments of error, defendant argues that the court erred in:

(1)   "* * * merg[ing] Count 2 with Count 1 'for sentencing,' but convict[ing] defendant on both Count 1 and Count 2,"

(2)   "* * * merg[ing] Count 4 with Count 3 'for sentencing,' but convict[ing] defendant on both Count 3 and Count 4,"

(3)   "* * * merg[ing] Count 5 with Count 3, but convict[ing] defendant on both Count 3 and Count 5," and

(4)   "* * * merg[ing] Count 8 with Count 7 'for sentencing,' but convict[ing] defendant on both Count 7 and Count 8."

Counts one and two charge kidnapping in the first degree. ORS 163.235 provides, in part:

"(1)    A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 [second-degree kidnapping[2]] with any of the following purposes:

"* * * * *

"(c)    To cause physical injury to the victim; or

"(d)    To terrorize the victim or another person."

Defendant was convicted in Count one of kidnapping "with the purpose of causing physical injury to [the victim]." He was convicted in Count two of kidnapping "with the purpose of terrorizing [the victim]." At sentencing, defendant asked the court to merge the two convictions, or, in the alternative, merge the sentences, pursuant to ORS 161.067. The court merged the two counts "for purposes of sentencing," but did not merge the convictions. On appeal, defendant argues that the two convictions for kidnapping should merge, because they represented "alternate ways of committing the *single* crime of kidnapping in the first degree." Defendant relies on the Supreme Court's holding in *State v. Barrett*, 331 Or 27, 10 P3d 901 (2000), and in particular, the court's analysis of ORS 161.067 in that case.

In *Barrett*, the court was asked to determine "whether a sentencing court may impose multiple life sentences on [the] defendant for the aggravated murder of one victim." 331 Or at 29. In making that determination, the court first considered the text of *former* ORS 161.062(1), the predecessor statute to ORS 161.067(1). That provision stated:

"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof

---

[2] ORS 163.225 provides, in part:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a) Takes the person from one place to another[.]"

of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

The court concluded that whether the defendant could receive multiple life sentences depended on whether the aggravated factors constituted "two or more statutory provisions." *Barrett*, 331 Or at 32. The court examined the statute defining aggravated murder, ORS 163.095, which provides, in part:

"As used in ORS 163.105 and this section, 'aggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances[.]"

The court then said:

"[We] think that the use of a single section * * * is some indication that the legislature intended to define a single crime. The wording of the first sentence of ORS 163.095 supports that interpretation. It defines aggravated murder as murder 'committed under, or accompanied by, *any*' of various aggravating circumstances. 'Any' means one or more. Thus, the first sentence of ORS 163.095 suggests that any or all the enumerated circumstances simply serve to prove the single essential element of 'aggravation.'

"* * * * *

"* * * The wording of the statute that we just have reviewed shows that the harm that the legislature intended to address by ORS 163.095 was the intentional, aggravated killing of another human being. The aggravating factors constitute no more than different theories under which murder becomes subject to the enhanced penalties for aggravated murder. That defendant's conduct in intentionally murdering the victim in this case was 'aggravated' by 'any,' *i.e.*, one or more, act surrounding that conduct does not convert that conduct into more than one separately punishable offense."

*Barrett*, 331 Or at 35-36 (emphasis in original; footnote omitted). As a result, the court concluded that the defendant could not be convicted of multiple counts of aggravated murder. It explained, "We think that the appropriate procedure would have been to enter one judgment of conviction reflecting the

defendant's guilt on the charge of aggravated murder, which judgment separately would enumerate each of the existing aggravating factors." *Id.* at 37. *See also State v. Acremant*, 338 Or 302, 330, 108 P3d 1139 (2005) (noting *Barrett*'s holding that, "when a trial court convicts a defendant of multiple counts of aggravated murder for the death of a single victim based upon different aggravating circumstances, the trial court should enter only one judgment of conviction of aggravated murder for that victim, with the judgment enumerating each of the supporting aggravating factors").

Based on the holding in *Barrett*, defendant argues:

"[T]he first sentence of the first-degree kidnapping statute has the same structure as the first sentence of the aggravated murder statute. It defines first-degree kidnapping as the commission of second-degree kidnapping 'with *any* of the following purposes.' * * * [Similar to the aggravated murder statute] the first sentence of ORS 163.235 suggests that any or all of the enumerated purposes simply serve to elevate the crime of kidnapping from second-degree kidnapping to first-degree kidnapping. Thus, if a person commits the single crime of kidnapping, with *one or more* of the enumerated purposes, he has committed first-degree kidnapping."

(Emphasis in original.)

The state responds that *Barrett* is distinguishable, because, in that case, there was only one murder; therefore, it follows there could only be one crime. In contrast to *Barrett*, the state argues that here two kidnappings occurred—one when defendant pushed the victim back into her apartment, and one arising from defendant's actions once he was in the apartment. Consequently, the state argues that, to fulfill the legislature's intent, the criminal record should reflect the full extent of defendant's conduct. The state also argues, in the alternative, that even if ORS 161.067(1) does not permit the entry of two convictions, there is evidence that the two kidnappings were separated by "[a] sufficient pause that afforded [defendant] the opportunity to renounce his criminal intent," and therefore, ORS 161.067(3)[3] applies.

---

[3] ORS 161.067(3) provides:

"When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated

■ We agree with defendant that the first-degree kidnapping statute, under the *Barrett* analysis, is indistinguishable from the aggravated murder statute. It is written in a manner that is similar to the aggravated murder statute, in that second-degree kidnapping becomes first-degree kidnapping by "any" of the enumerated means in the statute. Any or all of the enumerated circumstances operate to enhance second-degree kidnapping to first-degree kidnapping. The multiple intent factors constitute only different theories under which second-degree kidnapping becomes subject to the enhanced penalties of first-degree kidnapping. We also reject the state's argument that the kidnapping convictions are separately punishable because they involved two kidnappings separated by a "sufficient pause." The record in this case would not permit a rational trier of fact to find a second kidnapping based on defendant's pulling of the victim through her apartment. *See State v. Wolleat*, 338 Or 469, 478, 111 P3d 1131 (2005) (evidence that the defendant "moved the victim from the bedroom to the living room, approximately 15 to 20 feet, while he assaulted her" was insufficient to establish the mental element necessary to prove kidnapping). Accordingly, the trial court should have entered only one judgment of conviction on the kidnapping counts.

■ Defendant next assigns error to the trial court's failure to merge the two convictions for assault in the fourth degree (Counts four and five) with the conviction for assault in the second degree (Count three). Defendant was charged in Count three of assault in the first degree. The indictment alleged that defendant "did unlawfully and intentionally cause serious physical injury to [the victim] by means of a dangerous weapon, to wit: shoes[.]" Counts four, five, and six accused defendant of assault in the second degree, and alleged, respectively, that defendant "did unlawfully and intentionally[,]" "unlawfully and knowingly[,]" and "unlawfully and recklessly, under circumstances manifesting

violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

extreme indifference to the value of human life," cause physical injury to the victim by use of "a dangerous weapon, to wit: shoes[.]"

In his motion for a judgment of acquittal, defendant argued that he should be acquitted on all of the assault counts, because his shoes did not constitute a "dangerous weapon." In response to that argument, the prosecutor asked that, as to Count three for assault in the first degree, the court consider the lesser-included offense of assault in the second degree, in that defendant "did unlawfully and intentionally cause serious physical injury to [the victim]." The prosecutor, while conceding that the second-degree assault counts were all "alternative theories of Assault Two," did not suggest that the trial court consider a lesser-included offense for those counts, even though they, too, relied on a finding that defendant's shoes constituted a "dangerous weapon."

The trial court concluded that defendant's shoes did not constitute a "dangerous weapon," and it therefore found defendant guilty, in Count three, of the lesser-included offense of assault in the second degree. The court based that decision on the prosecutor's argument that defendant caused "serious physical injury" to the victim. The court then found defendant guilty, in Counts four and five, of the lesser-included offense of assault in the fourth degree. Finally, as to Count six, the court stated:

"And in Count Six, I find that he's not guilty on the lesser included Count Three, because I don't think that the injuries that were rendered, or the punishment, physical punishment that was inflicted here, truly qualifies for circumstances manifesting extreme indifference to the value of human life."

At sentencing, the state, in making its recommendations, stated that "Count Four, which is lesser included Assault Four, would merge with Count Three, and, again, Count Five, lesser included Assault Two, the state would say that that merges with Count Three also." The trial court eventually concluded that Counts four and five merged with Count three "for the purposes of sentencing," but did not merge the convictions.

On appeal, defendant argues that the convictions for Counts four and five should have merged with the conviction

for Count three, because Counts four and five were lesser-included offenses of Count three. Defendant points to our holding in *State v. Sanders*, 189 Or App 107, 110, 74 P3d 1105 (2003), *rev den*, 336 Or 657 (2004), in which we held that convictions for the lesser-included offense of second-degree assault should merge with the conviction of first-degree assault. The state counters that *Sanders* is not applicable, because Counts four and five were not lesser-included offenses to Count three. Rather, Count three and Counts four and five represented "two distinct assaults * * * with sufficient pause between them that afforded defendant a sufficient opportunity to renounce his criminal intent."[4] The trial court record, however, indicates that the state at trial treated Counts four and five as lesser-included offenses to Count three. All four assault counts in the indictment relied on the same theory, that defendant's shoes were a "dangerous weapon." Indeed, the state admitted to the trial court that Counts four, five, and six were simply variations of the same assault. The only thing that separated those counts from Count three was the degree of assault for which defendant was indicted. Also, at sentencing, the state told the court that Counts four and five should merge with Count three. As the record indicates, there is no way to understand those counts other than as lesser-included offenses for Count three. Our holding in *Sanders*, therefore, is directly on point. The trial court erred in failing to merge the convictions for Counts four and five with the conviction in Count three.

■        Defendant also assigns error to the trial court's refusal to merge the convictions for Counts seven and eight, burglary in the first degree. The state alleged in Count seven that defendant "did unlawfully and knowingly enter and remain in a building * * * with the intent to commit the crime of assault therein[.]" In Count eight, the state alleged that defendant "did unlawfully and knowingly enter and remain

---

[4] The state points to the fact that the trial court found that both the victim's shoulder injury and the injury to her teeth constituted serious physical injury as proof that the trial court found two distinct assaults. The trial court stated:

"I find * * * that the defendant did on this day in question intentionally caused serious physical injury to the victim. * * * I find this serious physical injury to be twofold and (tape inaudible) of the statute which describes protracted impairment of the function of a bodily organ."

We do not understand the trial court's findings to indicate that it found two distinct assaults. It found that one assault caused a "twofold" serious physical injury.

in a building * * * with the intent to commit the crime of men-acing therein[.]"[5] Defendant argues that the allegations in these two counts reflect a single act of unlawful entry and, consequently, the convictions should merge. The state counters that, pursuant to the Oregon Supreme Court's holding in *State v. Barnum*, 333 Or 297, 39 P3d 178 (2002), defendant was properly convicted of two counts of burglary arising from the same entry.

The issue framed by the parties is the precise issue that we decided contrary to the state's argument in *State v. Lucio-Camargo*, 186 Or App 144, 62 P3d 811 (2003). In that case, we explained the conflict that we perceive between the applicable Supreme Court case law and the language of ORS 161.067. The Supreme Court granted review in *Lucio-Camargo*, 336 Or 60, 77 P3d 635 (2004), but the defendant died before the court issued an opinion and accordingly, the trial court was directed to vacate the judgment of conviction. The state says that *Lucio-Camargo* was wrongly decided and that *Barnum* is controlling. It relies on the provisions of ORS 167.067(3), which authorize separately punishable offenses when the same criminal conduct or criminal episode violates only one statutory provision, involves only one victim, and there are repeated violations of the same statutory provision against the same victim separated by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce criminal intent. It concludes that *Barnum* presents no conflict once it is recognized that *Barrett* and other case law implicate only ORS 161.067(1) and (2) and that *Barnum* refers only to ORS 161.067(3). However, we observed in *Lucio-Camargo* that "*Barnum* appears, without

---

[5] ORS 164.225 provides, in part:

"(1) A person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom the person:

"* * * * *

"(b) Causes or attempts to cause physical injury to any person."

ORS 164.215 provides, in part:

"(1) Except as otherwise provided in ORS 164.255, a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein."

explanation, to authorize multiple convictions and punishments even though the defendant's conduct violated only one statutory provision and does not otherwise qualify under subsections (2) and (3) of ORS 161.067." 186 Or App at 154.

We reiterate our reasoning in *Lucio-Carmargo* in this case and adhere to it. As we explained in that opinion, the holding in *Barnum* places us in a quandary in light of the applicable statutes, their policy, and the Supreme Court's previous precedents, including *Barrett*. Even under *Barnum*, it appears that one crime of burglary must have ended before another began in order for ORS 161.067(3) to be applicable. Here, we are unaware of any evidence that demonstrates that defendant's unlawful entry ever ended. In other words, the state's assertion why *Lucio-Carmargo* was wrongly decided does not appear to engage with its facts or the facts of this case. In the midst of the conflict in case law, we resort to following the stated policy of ORS 161.067 that there are only as many separately punishable offenses as there are separate statutory violations. It follows that a single conviction for burglary more accurately reflects defendant's unlawful entry into the victim's premises than two convictions for burglary, and that his other convictions reflect his conduct after that illegal entry.

Defendant makes two other assignments of error, discussion of which would not benefit the bench or bar. We affirm on those assignments and decline to address them further.

Judgments of conviction for first-degree kidnapping, fourth-degree assault, second-degree assault, and first-degree burglary vacated; remanded for resentencing pursuant to ORS 138.222(5) with instructions (1) to enter a judgment of conviction for first-degree kidnapping reflecting that defendant was convicted on both theories, (2) to enter a judgment of conviction for second-degree assault, and (3) to enter a judgment for first-degree burglary reflecting that defendant was convicted on both theories; otherwise affirmed.