147 P.3d 313 (2006)
341 Or. 624
STATE of Oregon, Petitioner on Review,
v.
Nathaniel Dale WHITE, Respondent on Review.
(CC CR0001843; CA A114793; SC S53087).
Supreme Court of Oregon.
Argued and Submitted September 6, 2006.
Decided November 9, 2006.
Douglas F. Zier, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
Anne Fujita Munsey, Senior Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Peter A. Ozanne, Executive *314 Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.
Before DE MUNIZ, Chief Justice, and CARSON, GILLETTE, DURHAM, BALMER and KISTLER, Justices.[**]
GILLETTE, J.
In this criminal appeal, we are asked to explain the correct application of ORS 161.067, the so-called anti-merger statute, in circumstances in which a defendant is charged with multiple counts of burglary based on the same incident. The Court of Appeals held that the trial court misapplied ORS 161.067 when it denied defendant's request to merge two convictions for first-degree burglary. State v. White, 202 Or.App. 1, 121 P.3d 3 (2005). The state contends that the Court of Appeals is wrong and that the trial court's decision was correct. As we shall explain, we agree with the Court of Appeals that only one judgment of conviction for first-degree burglary should have been entered. Accordingly, we affirm the decision of the Court of Appeals.
The relevant facts are as follows. Defendant and the victim were romantically involved and shared an apartment until late August 2000. At that time, defendant was arrested on assault charges and spent the next two weeks in custody. While defendant was in custody, the victim obtained a restraining order against him and moved to another apartment.
At some point thereafter, the victim encountered defendant as she was leaving her apartment to go to work. She retreated into her apartment and locked the door. After a few minutes had passed, the victim believed that defendant had left and opened the door. Defendant, who had been hiding beside the door, shoved the door open and pushed the victim back inside. Defendant then entered the apartment, covered the victim's mouth with his hand, and grabbed her throat. He told her, "These games will stop" and also told her not to scream. The victim indicated that she understood, and defendant then told the victim, "We're going to close the blinds."
When defendant let go of the victim to close the blinds to a window, the victim unlocked and opened the door to the balcony, ran outside, and started to scream to her neighbors for help. Defendant came out after the victim, grabbed her legs, and tried to pull her back into the apartment. The victim held onto the balcony railing and continued screaming. Neighbors then observed defendant punching the victim "until she went down on her side," then "stomping" on the victim's head and body. Defendant eventually fled, leaving the victim with a fractured right wrist, facial fractures, a shoulder injury, broken teeth and a cut lip.
Defendant was charged with various crimes, including two counts of first-degree burglary. One burglary count alleged that defendant "did unlawfully and knowingly enter and remain in a building * * * with the intent to commit the crime of assault therein." (Emphasis added.) The other burglary count charged that defendant "did unlawfully and knowingly enter and remain in a building * * * with the intent to commit the crime of menacing therein." (Emphasis added.) After a trial to the bench, the trial court found defendant guilty of most of the charged crimes, including the two burglary counts. Defendant then asked the trial court to merge the two burglary convictions into a single conviction, arguing that the two counts were not "separately punishable offenses" under the so-called anti-merger statute, ORS 161.067. The trial court denied defendant's request, but did agree to "merge" the two counts "for purposes of sentencing."[1]
Defendant appealed that decision, arguing that there was no basis in the law, and particularly not under ORS 161.067, for entering anything more than a single first-degree *315 burglary conviction. In that regard, defendant noted that the two burglary counts against him described a single unlawful entry and a single victim, and both referred to a single statutory provision, i.e., ORS 164.225 (the statutory definition of burglary in the first degree). Defendant argued that, contrary to the trial court's apparent view, the fact that a person intends to commit more than one crime against a single victim at the time that he or she unlawfully enters a building does not transform that single entry into multiple burglaries. Thus, defendant argued, even if he were guilty of unlawfully entering the victim's apartment with the intent to commit two crimes (assault and menacing), in the end, he could be convicted of only a single count of burglary.
Before the Court of Appeals, the state responded by pointing to State v. Barnum, 333 Or. 297, 39 P.3d 178 (2002), a case that similarly involved a single unlawful entry that resulted in two burglary convictions. In Barnum, this court held that the defendant "properly [had been] charged [with] and convicted of two counts of burglary" because "there was sufficient evidence that defendant entered or remained unlawfully with the intent to commit arson and that he entered or remained unlawfully with the intent to commit theft." Id. at 302-03, 39 P.3d 178. The state argued that the foregoing holding in Barnum established "unequivocally that separate convictions are appropriate when the entry and remaining are done with intent to commit different crimes."
In the ensuing decision and opinion in this case, the Court of Appeals confessed to a certain amount of confusion over the Barnum case, particularly in light of this court's previous precedents, including State v. Barrett, 331 Or. 27, 10 P.3d 901 (2000). The Court of Appeals repeated its earlier observation in State v. Lucio-Camargo, 186 Or. App. 144, 62 P.3d 811 (2003), that
"`Barnum appears, without explanation, to authorize multiple convictions and punishments even though the defendant's conduct violated only one statutory provision and does not otherwise qualify under subsections (2) and (3) of ORS 161.067.'"
White, 202 Or.App. at 12-13, 121 P.3d 3 (quoting Lucio-Camargo, 186 Or.App. at 154, 62 P.3d 811). Apparently at a loss as to how to proceed, the Court of Appeals resorted to the stated policy behind ORS 161.067that there are only as many separately punishable offenses as there are separate statutory violationsand concluded that defendant could be convicted of only one burglary. White, 202 Or.App. at 13, 121 P.3d 3. Accordingly, the Court of Appeals vacated the trial court's judgment in part and remanded with instructions to enter a single judgment of conviction for first-degree burglary reflecting that defendant had been convicted on both of the state's theories, i.e., unlawful entry with an intent to menace and unlawful entry with an intent to assault. Id.
Before this court, the state argues that the trial court correctly entered two judgments of conviction and that the Court of Appeals erred in vacating one of those judgments. The state contends, as it did below, that Barnum is directly on point and controlling, insofar as it holds that the law permits multiple burglary convictions based on a single unlawful entry.[2] Defendant responds that the outcome in Barnum cannot be reconciled with this court's previous "merger" cases and that, in any event, Barnum's analytical underpinnings are so unclear that the Court of Appeals correctly declined to follow it.
Before we turn to the specifics of the parties' arguments, we set out the statutes and other background relevant to those arguments. We begin with ORS 164.225, the statute that defines burglary in the first degree. It provides, in part:

*316 "(1) A person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom the person:
"* * * * *
"(b) Causes or attempts to cause physical injury to any person."
ORS 164.215, the statute referred to ORS 164.225, provides, in part:
"(1) Except as otherwise provided in ORS 164.255, a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein."
Also central to the present controversy is ORS 161.067, the so-called anti-merger statute, which provides, in part:
"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.
"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. * * *
"* * * * *
"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."
This court briefly described the history and purpose of ORS 161.067 (in the context of its nearly identical precursor, former ORS 161.062 (1987) (amended by Or. Laws 1991, ch. 386, § 9; Or. Laws 2003, ch. 629, § 4)) in State v. Crotsley, 308 Or. 272, 779 P.2d 600 (1989). There, we noted that the statute was adopted by the people in 1986 as part of the "Crime Victims' Bill of Rights" initiative and it appears to reject earlier decisions of this court requiring consolidation of multiple convictions and sentences arising from the same criminal episode. We concluded that the provision reflects a legislative intent that "a person who commits multiple crimes by the same conduct or during the same criminal episode should have a criminal record reflecting each crime committed." Id. at 276-77, 779 P.2d 600. In Crotsley, this court applied that legislative intent to hold that a defendant who had forcibly raped a 14-year-old girl was properly convicted of both first-and third-degree rape because, in a single act, he had violated both the forcible rape statute, ORS 163.375(1)(a), and a separate statutory provision, ORS 163.355, pertaining to sexual intercourse with a person under 16 years of age.[3] The court concluded that, in the context of ORS 161.062(1) (almost identical counterpart of ORS 161.067(1)), the term "two or more statutory provisions" meant provisions that addressed "separate and distinct legislative concerns." Id. at 278, 779 P.2d 600.
On the same day that this court decided Crotsley, it also decided another merger case, State v. Kizer, 308 Or. 238, 779 P.2d 604 (1989). In Kizer, the defendant argued that the trial court had erred in convicting and sentencing him on two counts of forgery when he had forged and passed a single check. The court held that, although the forgery statute, ORS 165.007, superficially appeared to contain two separate criminal prohibitions (against "making" or "uttering" a forged instrument), the accompanying legislative commentary clearly revealed a legislative intent to define a single crime.[4] As *317 such, the Kizer court concluded, the defendant could not be convicted of two separate counts of forgeryone for "making" a bad check and the other for "uttering" that same check. Id. at 243-44. Kizer thus demonstrates that it is necessary to examine the relevant substantive statute (or statutes) in order to determine whether the legislature intended that particular conduct be treated as violating "two or more statutory provisions" for purposes of ORS 161.067(1).
Finally, in Barrett, this court considered a defendant's claim that, even if the state properly had charged him with three counts of aggravated murder, ORS 163.095, each on a different theory of aggravation, he could be convicted of only a single count of that crime when there had been a single murder victim. We began by noting that ORS 163.095 sets out a number of circumstances that transform ordinary murder into aggravated murder. After examining that statute, the court concluded that the legislature did not intend to treat each of the enumerated aggravating circumstance as a separately punishable crime but, instead, intended to set out the various theories that could be used to prove one element ("aggravation") of a single crime, aggravated murder. Thus, the court held, the fact
"[t]hat [the] defendant's conduct in intentionally murdering the victim * * * was `aggravated' by `any,' i.e., one or more, act surrounding that conduct does not convert that conduct into more than one separately punishable offense."
Barrett, 331 Or. at 36, 10 P.3d 901. That is, this court concluded that the defendant could be convicted of only a single count of aggravated murder.
The court acknowledged, however, that the fact of unanimous guilty verdicts on multiple theories of aggravation should in some fashion be memorialized. The court explained:
"If the trial court were to enter a conviction on only one count, and dismiss the other two, it always would be possible that an appeal would result in a reversal, for insufficient evidence, of the count that was selected to serve as the basis for conviction. With the other two counts dismissed, defendant would be able to argue that he was entitled to a judgment of acquittal on the charge of aggravated murder. Such an outcome would be inappropriate, if there were evidence to sustain defendant's guilt under * * * the other * * * counts."
Id. at 36-37, 10 P.3d 901. Accordingly, the court remanded the case to the circuit court for resentencing, with instructions to enter a single judgment of conviction for aggravated murder, which judgment would enumerate each of the aggravating circumstances that the jury had found to exist. Id. at 37, 10 P.3d 901.
That brings us to Barnum. As noted, Barnum is factually similar to the present case, in that it also involved multiple charges of first-degree burglary, ORS 164.225, based on the same conduct or criminal episode. In Barnum, the defendant broke into the victim's home while she was on vacation, stole the victim's house keys and other items, and set fire to the home. Based on that incident, the defendant was charged with, among other things, two separate counts of first-degree burglary. The first count alleged that the defendant had "entered and remained in the victim's home * * * with the intent to commit arson," while the second count alleged that he had "entered and remained in the victim's home * * * with the intent to commit theft." 333 Or. at 300, 39 P.3d 178. After a bench trial, the trial court found the defendant guilty of both counts. The defendant moved to merge the two convictions. The trial court denied the motion, finding that the requirements for merger set out at ORS 161.067 had not been met because there were "`different elements in each offense'" and a "`sufficient pause between the stealing of the keys and the setting of the fire to allow a termination of the criminal conduct.'" State v. Barnum, 157 Or.App. 68, 77, 970 P.2d 1214 (1998) (quoting trial court's statement). The Court of Appeals reversed, holding that, given that there had been a single unlawful entry, the trial court's conclusion that there were different *318 elements in each burglary offense was erroneous. Id. at 78, 970 P.2d 1214.
On review, this court affirmed in part and reversed in part. The court noted, first, that ORS 164.225(1) provides that a person commits burglary when he or she "enters or remains unlawfully" in a dwelling with the intent to commit a crime therein. Barnum, 333 Or. at 302, 39 P.3d 178. The court then suggested that, given that the defendant had not challenged his indictment on two counts of burglary, he properly could be convicted of both counts as long as the trier of fact found (as it had) that each element of each count had been proved beyond a reasonable doubt. Id. As authority for that proposition, the court relied upon the passage from Barrett that we quoted earlier:
"`If the trial court were to enter a conviction on only one count [of aggravated murder], and dismiss the other * * *, it always would be possible that an appeal would result in a reversal, for insufficient evidence, of the count that was selected to serve as the basis for conviction. With the other [count] dismissed, defendant would be able to argue that he was entitled to a judgment of acquittal on the [remaining charge].'"
Id. (quoting Barrett, 331 Or. at 36-37, 10 P.3d 901) (brackets in original).
This court in Barnum then proceeded to a different question: "May [the] defendant be punished separately for each of the two counts?" Barnum, 333 Or. at 302, 39 P.3d 178. The court indicated that the answer to that question depended on whether the defendant's two violations of the same statute "were `repeated violations * * * separated * * * by a sufficient pause in defendant's criminal conduct * * * `within the meaning of ORS 161.067(3)." Id. Ultimately, the court concluded that the evidence presented at trial was not sufficient to support a conclusion of repeated violations separated by a sufficient pause, and that the Court of Appeals had been correct in holding that the two burglaries could not be separately punished. Id.
As noted, the parties in the present case disagree about Barnum's relevance. According to the state, Barnum exemplifies the idea, first discussed in Crotsley, 308 Or. at 276-77, 779 P.2d 600, that ORS 161.067 reflects the legislature's intent that
"criminal records [should] accurately reflect all crimes actually committed and that a person who commits multiple crimes by the same conduct or during the same criminal episode should have a criminal record reflecting each crime committed rather than only a single conviction which would not accurately portray the nature and extent of that person's conduct."
The state suggests that that broadly stated intent compelled the first holding in Barnum  that the defendant there properly had been convicted of two burglariesand that the factual similarities between Barnum and the present case compel a similar result here. However, the state does not explain how the words of ORS 161.067 relate to that analysis or to its general contention that a defendant's single unlawful entry properly may result in the entry of two burglary convictions.
The state's reticence may arise out of its view that ORS 161.067 really is directed at a different issuewhether multiple convictions arising out of the same conduct or criminal episode are "separately punishable." The state argues, in that regard, that ORS 161.067 functions primarily as a "gatekeeper" statute, aimed at determining whether multiple convictions are potentially subject to consecutive sentencing under a different statute, ORS 137.123. The state contends that this court took that view in Barnum.
Defendant does not deny that the state's theory is consistent with Barnum. He contends, however, that, in light of the words and history of ORS 161.067 and this court's previous cases interpreting it, the court's holdings in Barnum and, indeed, the ultimate outcome of Barnum, should not be treated as controlling. We agree with that assessment.
Barnum's problems began, we think, with its failure to address directly the definition of first-degree burglary in ORS 164.225: The court assumed, without analysis, that, when the statute referred to "enter[ing] or remain[ing] unlawfully in a building with intent *319 to commit a crime therein," it was describing two separate statutory violations that could arise out of a single unlawful entryone accomplished by entering the building with a criminal intent and the other accomplished by thereafter remaining in the building with a criminal intent. Working from that assumption, this court treated the question of multiple convictions in that case purely as a matter of sufficiency of the evidence: The court concluded that, even if there had been only one entry into the victim's home, the defendant properly could be convicted of two burglariesone for entering unlawfully and one for remaining unlawfullyas long as the evidence was sufficient to support the two convictions. Barnum, 333 Or. at 302-03, 39 P.3d 178.
By assuming, rather than searching for, the legislative intent behind the burglary statutes, this court in Barnum short-circuited the process that it discussed and employed in its earlier cases to determine whether the defendant had violated "two or more statutory provisions" for purposes of ORS 161.067(1). In fact, this court's opinion erroneously obscures the role of ORS 161.067 in deciding questions of "merger" like the one that was before it in Barnum.[5]
This court may have compounded the problem in Barnum by treating the inquiry under ORS 161.067(3) as addressing a different question from the propriety of multiple burglary convictions, and in describing that inquiry in terms of "whether defendant's two violations of the same statute (ORS 164.225) are separately punishable." Id. at 303, 39 P.3d 178 (emphasis added). In doing so, the court incorrectly suggested that ORS 161.067(3) might be about something other than the number of separately punishable offenses that a defendant can be adjudged to have committed in a single episode. In fact, in the present case, the state assumes apparently based on Barnumthat ORS 161.067(3) is about the potential for consecutive sentencing.
It is not, and this case presents the opportunity to say so. For one thing, an entirely different statuteORS 137.123is directed explicitly at determining when consecutive sentences are permitted, a fact that would seem to run counter to the idea that ORS 161.067(3) also is directed in some fashion to that issue. Furthermore, the state's theory would have the term "separately punishable offense" meaning something different in subsection (3) of ORS 161.067 than it does in subsection (1). However, under our usual rules of construction, and consistent with the overall structure of the statute, we ordinarily would assume that the term as it is used in ORS 161.067(3) would carry the same meaning that it has in ORS 161.067(1). We see no reason to depart from the usual rule here. In Barrett, this court clearly interpreted that term as it was used in ORS 161.067(1) as referring only to a conviction entered in the ultimate judgment, to which some sentence could attach.[6] We adhere to that view. It follows that subsection (3) of the same statute has the same scope. Any suggestion to the contrary in Barnum was unintended and, in any event, is wrong.
Finally, we must acknowledge that the ultimate decision in Barnum, affirming in part and reversing in part the decision of the Court of Appeals, may be wrong. On the one hand, the relevant holdingthat the defendant properly was "charged and convicted of two counts of burglary," 333 Or. at 303, 39 P.3d 178could be interpreted as referring only to the propriety of two guilty verdicts. Such a holding would have been *320 consistent with our prior merger cases. However, if the court had intended that meaning in Barnum, it would have had no reason to reverse any part of the Court of Appeals decision. But it did reverse that court's decision in part, and its decision to do so can only reasonably be understood as a rejection of the Court of Appeals holding that the trial court had erred in entering two judgments of conviction for first-degree burglary.
In the end, then, we agree with defendant that Barnum is an anomaly in the body of cases that discuss the proper application of ORS 161.067 when a defendant is charged with multiple offenses in connection with the same conduct or criminal episode. To the extent that it appears to depart from the cases that precede it, Barnum should not be followed.
The foregoing discussion brings us back to the present case and the question that it presents: When defendant was found guilty of "entering and remaining unlawfully" with the intent to menace and also was found guilty of "entering and remaining unlawfully" with the intent to commit assault, and both guilty verdicts arose out of the same unlawful entry into the victim's apartment, does Oregon law permit entry of two separate judgments of conviction for first-degree burglary? To answer that question, we must determine whether the conduct at issue gave rise to more than one "separately punishable offense" within the meaning of ORS 161.067. As described above, that statute provides that multiple "separately punishable offenses" may arise out of the same conduct or criminal episode in three circumstances: (1) when the conduct or criminal episode "violates two or more statutory provisions and each provision requires proof of an element that the others do not," ORS 161.067(1); (2) when the conduct or criminal episode violates only one statutory provision but involves two or more victims, ORS 161.067(2); and (3) when the conduct or criminal episode "involves repeated violations of the same statutory violation against the same victim" but only if each violation is "separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent," ORS 161.067(3). Subsection (2) clearly is irrelevant to the present case: There is no claim that defendant's criminal conduct was directed against more than one victim. We need only consider, then, whether defendant committed two "separately punishable" burglaries under subsections (1) or (3).
We already have touched briefly upon subsection (1) in our discussion of Barnum: We have acknowledged that the court's mistaken decision in Barnum seemingly arose out of an assumption that the burglary statute contains two separate "statutory provisions" within the meaning of ORS 161.067(1)one directed at unlawfully entering a residence with a criminal intent and another directed at unlawfully remaining in a residence with a criminal intent. As we will explain, that assumption does not survive close examination.
In Barrett, this court discussed the meaning of the term "statutory provisions" as it is used in ORS 161.067(1) and its now-repealed counterpart, former ORS 161.062(1) (1987). The court noted that it had interpreted the phrase "`two or more statutory provisions'" in Crotsley to refer to prohibitions that "`address separate and distinct legislative concerns.'" Barrett, 331 Or. at 33, 10 P.3d 901 (quoting Crotsley, 308 Or. at 278, 779 P.2d 600). The court also noted that, in Kizer, it had explained that the term
"`was not defined to mean a section, subsection, or paragraph; consistent with its purpose, the term can be interpreted to mean any provision defining a "single crime," whatever visual form the provision is given.'"
Id. (quoting Kizer, 308 Or. at 243, 779 P.2d 604). Finally, the court in Barrett noted that, in Kizer, the question under former ORS 161.062(1) (1987)whether the conduct at issue had violated "two or more statutory provisions"was resolved by determining whether the legislature intended the forgery statute at issue to define multiple crimes. Id. at 33-34, 10 P.3d 901.
Barrett thus maps out the proper approach to the question whether defendant's conduct in the present case violated "two or more *321 statutory provisions" pertaining to burglary for purposes of ORS 161.067(1). It indicates that we must determine if the legislature intended to define a single crime or two separate crimes when it enacted the first-degree burglary statute, and what elements constitute that crime (or crimes).
To make that determination, we begin with the critical wording of the general burglary statute that is incorporated by reference into ORS 164.225: "[A] person commits the crime of burglary * * * if the person enters or remains unlawfully in a building with intent to commit a crime therein." ORS 164.215. That definition has two plausible meanings. On the one hand, the legislature could have intended to present alternative methods of committing a single crime (burglary)by entering unlawfully or by remaining unlawfully after an initial lawful entry. On the other hand, the legislature could have intended to define two separate crimesentering unlawfully and remaining unlawfully.
Legislative history resolves that question. The official legislative commentary to the burglary statutes includes the following statement:
"As applied to the burglary sections, the concept of one committing the crime by `remaining unlawfully' represents a departure from the traditional notion that burglary requires a `breaking and entering' of an `unlawful entry.' * * * Under the proposed definition an initial lawful entry followed by an unlawful remaining would constitute burglary if accompanied by an intent to commit a crime."
Commentary to the Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 135 (July 1970) (emphasis added). In other words, the legislature included the "remains unlawfully" wording in the burglary statute solely to clarify that burglary could occur by remaining unlawfully after an initial lawful entry. It did not intend to provide that a defendant who commits burglary by entering a building unlawfully commits an additional, separate violation of the burglary statute by remaining in the dwelling thereafter.[7]
It follows that, although the legislature intended to provide two alternative ways to commit the crime of burglary, it did not define those alternatives in a manner that would permit multiple burglary convictions to arise out of a single unlawful entry. It did not intend to provide that a defendant would violate separate "statutory provisions" contained within the burglary statutes by, first, unlawfully entering a building and then by unlawfully remaining therein.
Neither do the burglary statutes suggest a legislative intent to treat a single unlawful entry or remainder as violating more than one "statutory provision" based on the burglar's intent to commit more than one crime inside the building. The burglary statute refers to an "intent to commit a crime" (emphasis added) inside the buildingany crime. Under the clear words of the statute, the state must prove some criminal intent, but the nature of the intended crime is irrelevant. That is, there is no apparent basis for differentiating a burglary based on an intent to assault from a burglary based on an intent to menace. Defendant's act of unlawfully entering the victim's apartment with either intent or with both intents would violate only one statutory provision.
We turn to the other potential basis for a claim that the trial court properly entered convictions for two burglariesthe idea that defendant's conduct involved repeated violations of the same statutory provision within the meaning of ORS 161.067(3). The state has suggested that the present case fits into that rule and that the only question remaining is whether each burglary was separated from the other "by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent." ORS 161.067(3). However, given that we have rejected the idea that the legislature intended to define as a separate crime the act of remaining unlawfully in a building after an unlawful entry, the idea *322 that one could unlawfully enter the building in question only once yet "repeatedly" violate the burglary statute cannot be sustained. An unlawful entry is a unitary act.
For the foregoing reasons, we conclude that, although defendant properly was charged with and even found guilty of two counts of first-degree burglary, each of which alleged a different crime that defendant intended to commit at the time of his unlawful entry, the trial court could not enter two judgments of convictions based on those verdicts. Under ORS 161.067, defendant did not commit two "separately punishable" burglaries, even if he broke into the victim's apartment with the intent to commit two different crimes. The Court of Appeals was correct in so holding.
The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.
NOTES
[**] Riggs, J., retired September 30, 2006, and did not participate in the decision of this case. Walters, J., did not participate in the consideration or decision of this case.
[1] Defendant also requested that the trial court merge certain of the other convictions, and the trial court denied those requests as well. On appeal, the Court of Appeals concluded that the trial court had erred in denying those other merger requests. White, 202 Or.App. at 5-11, 121 P.3d 3. The state does not challenge those other aspects of the Court of Appeals decision, and we do not address them in this opinion.
[2] The state contends that this court, in Barnum, was faced with an additional "thornier" question"whether separate punishment could be imposed on [the] defendant's two burglary convictions"which this court resolved by examining the factual record to determine whether the evidence showed a "sufficient pause" in the defendant's conduct within the meaning of ORS 161.067(3). The state suggests that that "thornier" question is not before the court in the present case because the trial court did not impose "separate," i.e., consecutive, punishments for defendant's two burglary convictions.
[3] The court made a similar determination with respect to the defendant's convictions for first-degree and third-degree sodomy.
[4] In Kizer, this court acknowledged the state's theory that "making" and "uttering" the same forged instrument might constitute distinct crimes "when there is a significant time separation between the making and the uttering," but concluded that the evidence presented at trial did not suggest any such time lag and that, as such, the case did not present an occasion to test the state's theory. Id. at 243, 779 P.2d 604.
[5] As this court has stated in other cases, the term "merger" in the strict sense refers to lesser-included offenses that "merge" if a defendant is convicted of a greater offense. See State v. Kessler, 297 Or. 460, 462-63, 686 P.2d 345 (1984) (describing that meaning). However, we use the term here in its expansive sense, i.e., to refer to the process of combining guilty verdicts on multiple counts of a crime into a single count for purposes of entry of judgment.
[6] That meaning is apparent from the analysis in Barrett: This court held that, although the defendant properly had been charged and "convicted," i.e., found guilty, of three counts of aggravated murder based on three different aggravating circumstances, the trial court could only "enter one judgment of conviction reflecting the defendant's guilt on the charge of aggravated murder, which judgment separately would enumerate each of the existing aggravating factors." Barrett, 331 Or. at 37, 10 P.3d 901.
[7] See also State v. Lucio-Camargo, 172 Or.App. 298, 18 P.3d 467 (2001), where the Court of Appeals set out extensive legislative history that is consistent with the point that we draw from the official commentary. Although that history is helpful and confirms our view of the legislature's intent, we find the official commentary to be determinative.