Argued and submitted February 27, affirmed December 30, 2009

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## LUIS MANUEL RIVERA-NEGRETE,
aka Luis Manual Rivera-Negrete,
*Defendant-Respondent.*

Clackamas County Circuit Court
CR0502388; A136282

224 P3d 702

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Laura A. Frikert, Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Landau, Presiding Judge, and Ortega, Judge, and Riggs, Senior Judge.

ORTEGA, J.

## ORTEGA, J.

During a traffic stop, defendant, a passenger in the stopped vehicle, aroused the suspicion of a police officer. The officer eventually asked defendant to get out of the vehicle and submit to a patdown. Defendant initially complied with the officer's request, but a physical altercation began shortly after the officer began the patdown. After the officer subdued defendant, the officer retrieved drug paraphernalia, a firearm, and a forged Social Security card from defendant's person. Defendant was charged with one count of unlawful use of a firearm, ORS 166.220; one count of unlawful possession of a firearm, ORS 166.250; one count of criminal possession of a forged instrument, ORS 165.022; and one count of resisting arrest, ORS 162.315. In a pretrial motion, defendant moved to suppress all physical and derivative oral evidence, arguing that it was the product of an unlawful stop and search. The trial court granted defendant's motion and entered an order suppressing all of the seized evidence. The state appeals. ORS 138.060. Because we conclude that the trial court's order contains an unchallenged basis for affirmance, we affirm.

██ We are bound by the trial court's findings of fact if there is evidence in the record to support them; we review its legal conclusions for errors of law. *State v. Hendricks*, 213 Or App 360, 362, 160 P3d 1014, *rev den*, 343 Or 467 (2007). We take the following facts from the trial court's written findings and, where indicated, from the record.

Shortly after 7:30 on a Saturday morning in late November, a Canby police officer was driving north on Highway 99E when he observed defendant, the front-seat passenger in a southbound car, look at him and then lean back quickly in his seat as if to hide. The officer turned around and followed the car for two and one-half miles. The officer testified that he pulled alongside the passenger side of the car and that, despite the early hour, there was sufficient light for him to observe that defendant bore several unidentified tattoos and wore clothing indicative of membership in a gang. The car's driver eventually committed a traffic infraction, and the officer pulled the car over, approached

the driver, and asked him for his driver's license and registration.

The officer's focus then turned to defendant, who was pretending to be asleep. The officer recognized defendant's clothing and tattoos as consistent with those of members of the "13th Street" gang, which is also known as the "Sureos" gang. The officer, who had received gang enforcement training, testified that he had previously encountered Sureos gang members who were armed and that he had recently removed three guns and several knives from Sureos gang members. The officer also testified that, during the stop, his "number one concern" was for his safety.

After observing defendant's tattoos and clothing, the officer told defendant that he knew that defendant was awake and asked him to sit up. Defendant continued to feign sleep and did not move his head; however, defendant's hands started to move. The officer testified that he told defendant, "Hey, dude. I know you're awake. Look over [at] me and talk to me." In response, defendant sat up and looked at the officer with "a thousand-yard stare," which the officer characterized as "a very menacing look." The officer testified that he then noticed that defendant bore other tattoos that were consistent with membership in the Sureos gang. At the same time, defendant's hands moved toward the car's center console, behavior that the officer characterized as "indexing" and that he noted often occurs when a person who has "something that they want to hide" unconsciously directs his attention to the object or objects he wants to conceal. Consequently, the officer believed that there was a weapon in the car.

The officer instructed defendant to place his hands on the dashboard and not to move until the officer granted permission to do so. The officer then asked defendant if he knew his driver's license or identification number. Defendant told the officer that his identification was in his wallet and asked the officer whether he had permission to retrieve it. The officer responded affirmatively and, after defendant handed him identification, reminded defendant that he should place his hands on the dashboard and not move until the officer returned. The officer then returned to his car and conducted a warrant check.

As the officer awaited the results of the warrant check, he noticed that defendant was looking at him in the car's rearview mirror and that defendant's hands were no longer on the dashboard but rather were moving about in a manner that caused the officer to believe that defendant was trying to conceal something. The officer went to defendant's door, opened it, and asked defendant to get out of the car and whether he was armed. Defendant hesitated and moved his hands to his waist and then to the corner of the center console, prompting the officer to call for backup.

Defendant eventually got out of the car, and the officer told him that he needed to do a patdown to ensure that defendant was not armed. Although the officer asked defendant to place both hands behind his back as part of the patdown, defendant placed only his left hand behind his back and placed his right hand in his pants pocket area. When the officer attempted to place defendant's right hand behind defendant's back, defendant "tensed up," but he allowed the officer to remove his hand from his pocket area. The officer then placed both of defendant's hands behind defendant's head.

When the officer's patdown search reached defendant's waistband, defendant placed his right hand atop the officer's hand and the officer pushed defendant against the side of the car. A struggle ensued, revealing a gun in defendant's waistband. During the struggle, the gun fell to the ground. After the officer subdued and handcuffed defendant, he retrieved the gun and conducted a search incident to arrest. He discovered a glass pipe, a forged Social Security card, and ammunition.

As noted, in his pretrial motion, defendant moved to suppress all physical and derivative oral evidence, arguing that he had been seized when the officer told him to "look over [at] me and talk to me." Defendant contended that, at the time that the officer made those statements, he lacked reasonable suspicion that defendant had committed a crime or constituted a threat to his safety. The state responded that no stop occurred until the officer told defendant to place his hands on the dashboard and that, at that time, the officer reasonably suspected that a crime had been committed and

that his safety might be in jeopardy. The trial court granted defendant's motion to suppress, explaining:

> "At the traffic stop, [the officer] obtained the license and registration from the driver and[,] instead of proceeding with the traffic stop and issuing a citation, [the officer] focused on Defendant. The character of [the officer's] asking Defendant and then telling Defendant to sit up and talk to him is sufficient to constitute a stop under *State v. Walp*, 65 Or App 781[, 672 P2d 374] (1983)."

The trial court then discussed whether the officer had had a reasonable concern for his safety at the time of the patdown and, after explaining that he had not, concluded:

> "The Court finds that there wasn't a threat to the officer until after * * * defendant was ordered out of the vehicle and the officer attempted to 'pat down' * * * defendant. Nor did [the officer] have a reasonable suspicion a crime had occurred at the time of the stop. Therefore, Defendant's Motion to Suppress is granted."

The court then entered a suppression order that provided, in part:

> "The court finds through an opinion letter * * * that [the officer] asked, and then told * * * defendant to sit up, which constituted a stop. [The court] also found that[,] under the totality of the circumstances, [the officer's] belief that * * * defendant posed an immediate threat of physical injury was not objectively reasonable at the time that the stop occurred."

On appeal, the state contends that the trial court erroneously granted defendant's motion to suppress because the officer's safety concerns were objectively reasonable. Defendant responds that, because the state has not challenged the trial court's determination that the officer's safety concerns arose during an unlawful stop, this court must affirm. *See Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 236, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005) ("[W]here [appellants] fail to challenge the alternative basis of the trial court's ruling, we must affirm it."). At oral argument, the state explained that, in its view, the trial court's order is based solely on its conclusion that the officer's safety concerns were not reasonable. We disagree with the state.

The trial court's letter opinion establishes that the trial court concluded that defendant was stopped when the officer told him to "look over [at] me and talk to me" and that the officer did not "have a reasonable suspicion [that] a crime had occurred at the time of the stop."[1] The trial court also concluded in its letter opinion that there were no objectively reasonable safety concerns to justify the officer's decision to conduct a patdown. Based on those statements in the trial court's letter opinion, it is apparent to us that the trial court concluded both that the officer unlawfully stopped defendant when he told him to "look over [at] me and talk to me" and that the officer unlawfully conducted a patdown of defendant's person.

We need not reach the state's argument that, when the patdown occurred, the officer had objectively reasonable concerns for his safety, because the state has not challenged the trial court's conclusion that defendant was stopped, without reasonable suspicion, when the officer told him to "look over [at] me and talk to me." That unchallenged conclusion is an independent basis for affirmance because, absent a showing of attenuation or independence from the illegal stop, the officer's post-stop observations that informed his safety concerns must be suppressed. *See State v. Hall*, 339 Or 7, 27, 115 P3d 908 (2005) (describing circumstances where evidence obtained in violation of a defendant's rights under Article I, section 9, of the Oregon Constitution is admissible).

■    At oral argument, the state argued, for the first time in this appeal, that, even if the trial court correctly concluded that the officer, without reasonable suspicion, stopped defendant by instructing him to "look over [at] me and talk to me," legitimate safety concerns existed at the time of the stop. We will not entertain a new argument asserted for the first time during oral argument before this court. *See, e.g., State v. Jones*, 184 Or App 57, 60 n 2, 55 P3d 495 (2002) ("At oral argument, defendant contended for the first time on appeal that the charged offenses were not of the same or similar character. Because defendant did not raise that issue in his opening brief, we decline to reach it here."); *State v. Wrenn*,

---

[1] We express no opinion on the correctness of the trial court's conclusion that the officer's directive constituted a stop.

150 Or App 96, 100, 945 P2d 608 (1997) (where the state did not make an argument to the trial court, the defendant did not have an opportunity to respond to that argument, and the state did not raise that argument in its brief to this court, the court would not consider the argument).

Affirmed.