EGAN, C. J.
*246 *556 Defendant appeals from a judgment of conviction after a jury trial for interfering with a peace officer by refusing to obey a lawful order, ORS 162.247(1)(b), assigning error to the trial court's denial of his motion for judgment of acquittal. Defendant contends that the officer's order for defendant to turn around and put his hands behind his back was not a lawful order, because it was a warrantless seizure in violation of Article I, section 9, of the Oregon Constitution. The state responds that the order was a lawful order justified by officer-safety concerns. Defendant also challenges the imposition of an award of attorney fees for court-appointed counsel on the offense of resisting arrest, of which defendant was acquitted. We conclude that the court did not err and affirm.
In reviewing the court's denial of the motion for judgment of acquittal, we view the facts in the light most favorable to the state and draw all reasonable inferences in the state's favor. State v. Lupoli , 348 Or. 346, 366, 234 P.3d 117 (2010). However, the facts are largely undisputed and only questions of law are raised on appeal.
Beaverton Police Officers Crino and Mendez were on patrol and drove by a restaurant parking lot that was the site of frequent thefts from cars. The officers were aware that the restaurant had been closed for 20 minutes. As the officers drove through the parking lot, they saw defendant standing near several parked cars. The officers decided to investigate whether defendant was looking into vehicles or whether he was intoxicated and about to drive. While Mendez went to speak with defendant, Crino stayed with the patrol car and learned that defendant matched the description of the owner of a car by which he was standing. Mendez returned and told Crino that defendant did not want to talk. The officers then saw defendant walk in the direction of a secluded patio at the back side of the restaurant, and decided to follow on foot. They approached defendant at the back door of the restaurant.
Crino told defendant that the restaurant was closed and asked defendant why he was there. He asked defendant's name, if he was employed by the restaurant, and whether *557 he had been standing by his own car. Defendant did not respond. When defendant took steps as if to leave, Crino told defendant that he was not free to go until the investigation of "what's going on here" was complete. Defendant became agitated and responded in an angry tone, "I don't have to talk to you," and "I'm not answering any of your questions."
Crino recognized signs that defendant was intoxicated, including a smell of alcohol, a flushed face, and blood-shot and watery eyes. Because of that, and because Mendez was a new officer, Crino called for backup. Two officers arrived and stood nearby. Crino told defendant that he was going to call someone from the restaurant to see if defendant had permission to be on the premises. Crino also told defendant that he would be arrested if he did not cooperate by providing his name and date of birth. Defendant appeared to become angrier and balled his fists and took a "bladed stance," shifting his weight back and forth, as if he intended to lunge or flee. Through clenched teeth, defendant stated, in a slow, angry tone, "I am not going to be arrested."
At that point, Crino told defendant to turn around to face the building and put his hands behind his back so that he could be handcuffed for officer safety. When defendant refused, Crino made the request a second time, telling defendant that, based on defendant's behavior, he believed defendant was going to fight and that he was going to place him in handcuffs for defendant's and his own safety. Defendant replied "no" and refused to turn around. Crino then told defendant that he was under arrest "for interfering." Defendant resisted as the officers tried to place his arms behind his back. There was a struggle, with defendant pulling away until the four officers took him to the ground and subdued and handcuffed him.
Defendant was charged with resisting arrest and interfering with a peace officer based on his refusal to turn around and place his hands behind his back. Crino, an instructor *247 in defensive tactics and the use of force, testified that he ordered defendant to turn around and place his hands behind his back to be handcuffed because he believed that defendant posed a risk to officer safety. Crino testified that defendant's body language demonstrated "pre-fight *558 cues"-indicating that defendant was preparing to lunge, run, or fight. Crino testified that defendant appeared to be looking past the officers for an escape route but that he never made a move toward the officers, never struck out at them, and never yelled at the officers or abused them in any way. However, Crino testified that defendant's apparent intoxication and agitation led him to conclude that defendant presented a risk to officer safety. He explained that intoxication makes people unpredictable and that "intoxicated people are more likely to-or more willing to fight with the police."
Defendant requested a judgment of acquittal on both charges and argued to the trial court that the order to turn around and place his hands behind his back was unlawful, because the officers had had no reasonable suspicion that defendant had committed an offense to justify the officers' stop of defendant. The state responded that, apart from justification for the stop, defendant's behavior provided reasonable suspicion for the officers' decision to temporarily restrain him for their safety. Defendant did not respond to the state's officer-safety argument. The court denied defendant's motion.
The jury acquitted defendant of resisting arrest but found him guilty of interfering. On appeal, defendant contends that the trial court erred in denying his motion for judgment of acquittal on the interfering charge, renewing his argument that Crino's order to turn around and place his hands behind his back was not lawful, because the officers had no basis on which to stop defendant.
The offense of interfering is defined in ORS 162.247(1)(b), which provides, in part:
"A person commits the crime of interfering with a peace officer *** if the person, knowing that another person is a peace officer ***:
"* * * * *
"(b) Refuses to obey a lawful order by the peace officer[.]"
The issue on appeal is the lawfulness of Crino's order for defendant to face the wall and put his hands behind his *559 back. An order is lawful for purposes of ORS 162.247(1)(b) if it is authorized by, and not in violation of, substantive law, State v. Navickas , 271 Or. App. 447, 450, 351 P.3d 801, rev. den. , 358 Or. 248, 364 P.3d 1001 (2015) ; State v. Ausmus , 336 Or. 493, 504, 85 P.3d 864 (2003), including constitutional law. State v. Illig-Renn , 341 Or. 228, 240, 142 P.3d 62 (2006).
Article I, section 9, protects people from unreasonable seizures by police.[1] It is undisputed that Crino's order for defendant to turn around and place his hands behind his back so that he could be handcuffed would have effected a seizure. Defendant asserts that the order was unlawful, because there was no warrant and officers did not have reasonable suspicion that defendant had committed or was about to commit a crime. The state responds that the order was reasonable in light of officer-safety concerns and, therefore, lawful under a long line of cases.
For purposes of the offense of interfering with a peace officer based on the failure to obey a lawful order, we long have held that the lawfulness of an order based on officer safety is to be judged independently of the validity of the initial police-citizen confrontation. State v. Bistrika , 261 Or. App. 710, 718, 322 P.3d 583, rev. den. , 356 Or. 397, 337 P.3d 127 (2014), cert. den. , --- U.S. ----, 136 S.Ct. 32, 193 L.Ed.2d 46 (2015) (orders given by police in reaction to threatening conduct are to be judged independently of legality of initial stop); State v. Neill , 216 Or. App. 499, 508, 173 P.3d 1262 (2007), rev. den. , 344 Or. 671, 189 P.3d 26 (2008) ("That the police may have acted unlawfully in initiating the search did not free defendant to interfere with reasonable directions by the police designed to reduce the risk of violence and maintain safety *248 once the search was commenced."); see State v. Rodinsky , 60 Or. App. 193, 196, 653 P.2d 551 (1982) (lawfulness of disobeyed order is to be judged independently of validity of initial police-citizen confrontation).
Most recently, in State v. Wilson , 283 Or. App. 823, 828-29, 390 P.3d 1114, rev. den. , 361 Or. 801, 400 P.3d 925 (2017), we held *560 that, even in the absence of a lawful initial seizure, an order may be justified by legally sufficient officer-safety concerns. In Wilson , the officers encountered the defendant in his car on a driveway while investigating a suspected burglary. They asked the defendant to roll down the car window, but the defendant refused, became agitated, and started searching for something around the center console area. Officers developed a concern that the defendant might reach for a weapon and ordered him out of the car. But the defendant refused, and he was ultimately charged with and convicted of interfering with a peace officer by refusing to obey a lawful order. Id. at 824-27, 390 P.3d 1114.
The defendant appealed, assigning error to the denial of his motion for judgment of acquittal, made on the ground that the officers lacked reasonable suspicion of criminal activity in support of the stop by ordering him to get out of his car. In rejecting the defendant's argument, we explained, citing Bistrika , that it was not necessary to assess whether the officers' stop of the defendant was supported by reasonable suspicion because, "even if the initial seizure of defendant was unlawful as unjustified by reasonable suspicion *** the ultimate order *** would be lawful if, in the totality of the circumstances, that order was justified by legally sufficient officer safety concerns." Id. at 827-28, 390 P.3d 1114. Thus, we explained, "even if defendant was stopped unconstitutionally, the officer safety doctrine could provide [the officer] with the lawful authority to order defendant to get out of the vehicle." Id. at 828, 390 P.3d 1114. Under our case law, it is clear that, even when the initial contact is unlawful, the refusal to obey a lawfully made order based on officer-safety concerns nonetheless will support a conviction on a charge of interfering with a police officer. That case law requires a rejection of defendant's contention that the police could not issue an order based on officer-safety concerns because they had no reasonable suspicion that he was engaged in criminal activity.[2]
*561 In arguing for a contrary result, defendant has not asked us to overrule that line of cases and, in particular, has advanced no argument that the standard for overruling our prior decisions is met. See State v. McKnight , 293 Or. App. 274, 279, 426 P.3d 669 (2018) (explaining that a party seeking to persuade this court to abandon its precedent must demonstrate that the precedent is plainly wrong). Instead, defendant relies on our case law implementing the officer-safety exception to the warrant requirement of Article I, section 9, in the context of motions to suppress evidence obtained as the product of a warrantless search or seizure. We recognize that the case law has developed differently in the context of suppression cases involving searches or seizures of property justified by officer safety. In State v. Bates , 304 Or. 519, 524, 747 P.2d 991 (1987), the Supreme Court held that the officer-safety exception in support of a search or seizure must be based on the officer's development of reasonable suspicion during the course of a lawful encounter with a citizen . Bates was a suppression case involving a search justified by officer safety. See also State v. Madden , 363 Or. 703, 712-15, 427 P.3d 157 (2018) (relying on Bates ). And, in State v. Rodriguez-Perez , 262 Or. App. 206, 212, 325 P.3d 39 (2014), a suppression case involving the validity of a frisk based on officer safety, we explained, citing Bates :
"Thus, there are three requirements for an officer's actions to be justified under the officer-safety doctrine: (1) the officer's actions must have occurred during a lawful encounter ; (2) the officer must have had a reasonable suspicion that the individual posed an immediate threat of serious physical injury; and (3) the steps the officer *249 took to protect the officer or others must have been reasonable."
(Emphasis added.)
It would appear, thus, that defendant is correct that in the suppression context, the case law has consistently applied the Bates requirement that the state demonstrate that the officer-safety concern alleged to justify a warrantless search or seizure arose during a lawful encounter. See, e.g. , State v. Shaw , 230 Or. App. 257, 265, 215 P.3d 105, rev. den. , 347 Or. 365, 222 P.3d 1091 (2009). But in Bates , the court did not have before it or address the question presented here-what constitutes a lawful order for the purposes of a charge of *562 resisting arrest. In that context, as we have explained, we have held that the lawfulness of the order does not depend on the lawfulness of the initial encounter. And, as previously noted, most recently, in Wilson , we explicitly held that it was unnecessary to determine the lawfulness of an initiating encounter in addressing whether an order was permissible based on officer-safety concerns that included the defendant's behavior in refusing to comply with simple requests. 283 Or. App. at 828, 390 P.3d 1114.
We acknowledge that, at least on the surface, there is some tension between the Bates line of cases and Wilson and its predecessors. But, as noted, defendant has not contended that Wilson and its predecessors are fundamentally irreconcilable with Bates such that they should be overruled; and it is not obvious, at least in the absence of argument by the parties, that Wilson is plainly wrong. Under those circumstances, Wilson controls here.
In his second assignment, defendant contends that the trial court erred in imposing court-appointed attorney fees of $1,800. We review the court's order for legal error. State v. Wallace , 258 Or. App. 800, 804, 311 P.3d 975 (2013). Defendant contends that, because he was acquitted of the resisting arrest charge, he should not be assessed for fees incurred in representing him on that charge. Defendant is incorrect. ORS 151.505 provides, in part:
"(1) At the conclusion of a case or matter ***, a trial, appellate or post-conviction court may include in its judgment a money award requiring that the person repay in full or in part *** the costs of the legal and other services that are related to the provision of appointed counsel, that have not previously been required to be paid under a limited judgment entered under ORS 151.487. An award under this section is a monetary obligation payable to the state.
"(2) Costs that may be included in a money award under this section include a reasonable attorney fee for counsel appointed to represent the person and a reasonable amount for expenses authorized under ORS 135.055."
The statute describes the court's authority, "[a]t the conclusion of a case," to include in its judgment a "money award" requiring a defendant to pay for "the costs of the legal and *563 other services that are related to the provision of appointed counsel." ORS 151.505 does not require a judgment of conviction or limit the imposition of the money award to attorney fees related to charges on which the defendant was convicted. On its face, even in the absence of a conviction, ORS 151.505 authorizes the imposition of the full amount of the court-appointed attorney fees for a defendant's representation.
Additionally, when there has been a judgment of conviction, ORS 161.665(1) provides:
"Except as provided in ORS 151.505, the court, only in the case of a defendant for whom it enters a judgment of conviction *** may include in its sentence thereunder a money award for all costs specially incurred by the state in prosecuting the defendant. Costs include a reasonable attorney fee for counsel appointed pursuant to ORS 135.045 or 135.050."
(Emphasis added.) ORS 161.665(1) explicitly authorizes the inclusion in a sentence of a money award for the costs of attorney fees for court-appointed counsel. Like ORS 151.505, ORS 161.665(1) does not limit the money award to attorney fees related to charges on which the defendant was convicted. ORS 161.665(1) authorizes an award for the full amount of the fees incurred for the defendant's court-appointed representation. There is no contention that court-appointed *250 counsel's fees were not reasonable. The court did not err in imposing fees of $1,800.
Affirmed.

Article I, section 9, provides:
"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

Defendant contended at oral argument that the officers did not have reasonable suspicion that defendant posed a threat of serious bodily harm; however, he did not raise that contention at trial or in his brief. Thus, the question is not properly before us and we will not consider it. State v. Rivera-Negrete , 233 Or. App. 96, 102, 224 P.3d 702 (2009).